**Philip COCHETTI, Appellant,**

**v.**

**John DESMOND, Walter M. Phillips, Jr. and Robert P. Kane, Appellees.**

**No. 77–1340.**

United States Court of Appeals, Third Circuit.

Argued Nov. 29, 1977.

Decided Feb. 21, 1978.

Nicholas Trott Long, Philadelphia, Pa., for appellant.

Mark N. Cohen, Asst. Atty. Gen., Michael Von Moschzisker, Deputy Atty. Gen., Eastern Regional Director, Robert P. Kane, Atty. Gen., Philadelphia, Pa., for appellees.

Before GIBBONS, VAN DUSEN, Circuit Judges, and FISHER,* District Judge.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

Philip Cochetti, formerly a Special Investigator III with the Pennsylvania Department of Justice, appeals from a summary judgment in favor of the defendants in his suit seeking relief from an allegedly wrongful discharge. Cochetti was employed in the Office of Special Prosecutor in Philadelphia. The defendants are John Desmond, the Chief Investigator in that office, Deputy Attorney General Walter Phillips, who headed the office, and Attorney General Robert P. Kane, who made the decision first to suspend and then to discharge Cochetti. The appellant's complaint alleges: (1) that as a result of a conspiracy among the defendants he was deprived of a property interest in his continued employment without being afforded due process of law; and (2) that he was discharged in retaliation for making statements that were protected by the first amendment's guarantee of free speech. The complaint seeks reinstatement, prospective injunctive relief, and compensatory and punitive damages. We conclude that, with the exception of the claim for punitive damages, all of Cochetti's claims for relief are moot. As to the claim for punitive damages, we conclude that on the record before the district court summary judgment was proper, even if there were disputed fact issues which might have made summary judgment on the remaining issues improper. Thus we affirm the judgment below.

* Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation.

In ruling on the motion for summary judgment, the district court concluded that Cochetti had a property interest in his continued employment. Based upon the pleadings, depositions on file, and affidavits, the court found such a property interest in the collective bargaining agreement between the American Federation of State, County and Municipal Employees, AFL–CIO, and the Commonwealth, entered into pursuant to the Public Employe Relations Act of July 23, 1970, P.L. 563, No. 195, 43 Pa.Stat.Ann. § 1101.101 *et seq.* Cochetti contended that he was entitled to a hearing prior to the termination of this property interest. However, the district court held that, in light of the sensitive nature of Cochetti's employment, the post-termination grievance and arbitration procedures provided by the collective bargaining contract afforded sufficient due process protection. Cochetti also contended that, regardless of the availability of a post-termination hearing procedure, the district court should consider his first amendment liberty claim since that claim depended on federal law independent of any state law property interest.[1] The court considered this claim but rejected it on the grounds, first, that Cochetti had waived his first amendment rights in accepting the employment and, second, that the sensitive nature of the investigation justified curtailing his first amendment rights.

At the time summary judgment was entered, an arbitration proceeding pursuant to the collective bargaining agreement had been concluded. At the close of this hearing the arbitrator had ordered that Cochetti be reinstated with back pay. The award had not been enforced, however, because of the lack of an appropriation of state funds. Recognizing that the appeal might be moot, this court requested counsel to advise us as to the current status of the award. Counsel have stipulated that two letters quoted in the margin[2] set forth Cochetti's employment status. These letters disclose that his suspension and termination were cancelled but that he is now on furloughed status because the Office of Special Prosecutor ceased to exist on December 6, 1976. On

---

1. *Skehan v. Board of Trustees,* 501 F.2d 31, 39 (3d Cir. 1974), *vacated and remanded on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).

2. January 25, 1977

Mr. Philip M. Cochetti
1232 Wolf Street
Philadelphia, PA 19148
Dear Mr. Cochetti:
    This is to transmit to you the results of our calculations regarding the moneys due to you in accordance with the arbitration decision and to elicit from you your concurrence with these figures.
    Enclosed you will find a summary of these calculations which concludes with a gross amount of $19,738.32.
    My staff has completed the necessary steps to cancel your termination of November 14, 1975 and your suspension beginning October 2, 1975. Further, we have placed you in a leave of absence without pay status beginning November 23, 1976 and ending on December 6, 1976 at the close of business, at which time our records now will indicate you as having been furloughed. Additionally, you will remain on the recall list for Special Investigator III in Philadelphia for two years, beginning December 6, 1976.
    Finally, since Commonwealth Court has sustained the Legislature's right to appropriate or not appropriate federal funds, we will be unable to issue your final salary check.
    I hope you appreciate our position in this matter.
                                Sincerely,
                                John S. Greecher
                                Personnel Director
                                            February 16, 1977
Mr. Philip M. Cochetti
1232 Wolf Street
Philadelphia, PA 19148
Dear Mr. Cochetti:
    A recent conversation with your attorney revealed that the accumulated annual and personal leave due to you as a result of your retroactive reinstatement was not computed when we provided you with the other compensation information.
    Since your reinstatement covers the period from October 2, 1975 to November 23, 1976 or 14 months for leave purposes, you would have earned 14 months × 1¼ annual days/month × 7.5 hours/day or 131.25 hours annual leave. In addition, you will be credited for two days or 15 hours of personal leave. This will total 146.25 hours leave due at your rate of $9.04 per hour or $1,322.10 due you in addition to the $19,738.32 that I advised you in my letter to you of January 25, 1977.
                                Sincerely,
                                John Greecher
                                Personnel Director

September 28, 1977, Cochetti received a check for $21,060.47 for the pay he would have received had he not been discharged. He has been credited with the lost time for annual leave purposes and, in accordance with governing Commonwealth regulations, he will remain on the recall list for Special Investigator III until December 6, 1978.

Even if we were to decide (1) that the grievance-arbitration procedures did not satisfy due process requirements, or (2) that the district court erred in rejecting the appellant's first amendment liberty claim, we could not now award either injunctive relief or compensatory damages. The appellant has received as much relief as could have been awarded by the district court on the instant complaint. Cochetti resists this conclusion by suggesting that during the period of his discharge he lost the opportunity to apply for a comparable position elsewhere in the Commonwealth once he learned that the Office of Special Prosecutor was to be terminated. This speculative suggestion, plainly an afterthought, was not referred to in the pleadings below. There is nothing in the record which would permit its consideration at this time. The mootness of this appeal must be determined on the basis of the record presented to the district court. Based on that record, the prayers for injunctive relief and compensatory damages are clearly moot.

The arbitration award did not include punitive damages. Cochetti insists that his prayer for the award of such relief is sufficient to require us to consider the merits of his due process and liberty claims. We agree that the arbitration award did not moot the claim for punitive damages. But, even assuming that the appellant's constitutional rights were violated, we do not think that punitive damages could have been awarded in this case.

It is clear that in certain circumstances punitive damages may be awarded for violations of civil rights. Judge Biggs made this point many years ago:

As we have seen, the suit involves the deprivation of civil rights. R.S. §§ 1979 and 1980, 8 U.S.C.A. §§ 43, 47 [42 U.S.C. §§ 1983 and 1985] give to the individuals thus deprived a right of action at law. Irrespective of these statutes, however, a right of action in the individual for damages for loss of political rights existed at common law. *Nixon v. Herndon,* 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759. Such an action sounds in tort and the jury may award exemplary or punitive damages. *Barry v. Edmunds,* 116 U.S. 550, 6 S.Ct. 501, 29 L.Ed. 729; *Wiley v. Sinkler,* 179 U.S. 58, 21 S.Ct. 17, 45 L.Ed. 84. In such an action the jurisdictional sum is to be determined by the amount claimed by the plaintiff in his complaint or declaration. *Hulsecamp v. Teel,* Fed.Cas.No.6862, 2 Dall. 358, 1 L.Ed. 414; *Wiley v. Sinkler,* supra, including an amount claimed by way of punitive damages, *Ragsdale v. Rudich,* 5 Cir.; 293 F. 182, unless it appears from the complaint or declaration that it is not possible for the plaintiff to recover the amount claimed or that the amount is claimed fraudulently in order to create jurisdiction in the court. *Smithers v. Smith,* 204 U.S. 632, 27 S.Ct. 297, 51 L.Ed. 656. This rule applies as well to suits in equity. *Maurel v. Smith,* D.C.N.Y., 220 F. 195.

*Hague v. Committee for Indus. Org.,* 101 F.2d 774, 789 (3d Cir.), *modified on other grounds,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). *See Fisher v. Volz,* 496 F.2d 333, 347–48 (3d Cir. 1974) (holding that in federal civil rights cases punitive damages may be awarded even without an award of compensatory damages); *Basista v. Weir,* 340 F.2d 74, 87–88 (3d Cir. 1965) (same). Although punitive damages may be awarded in civil rights cases, we must still examine the circumstances under which such an award would be proper. Punitive damages are not a favorite of the law. Usually assessed both as an example and as a warning against particularly egregious conduct, such damages serve both punitive and deterrent functions. Such awards may be particularly appropriate as a means of vindicating the public interest in preventing violations of civil rights by state officials. The availability of punitive damages as a

deterrent may be more significant than ever today, in view of the apparent trend of decisions curtailing the powers of federal courts to impose equitable remedies to terminate such violations. *See, e. g., Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Lewis v. Hyland,* 554 F.2d 93 (3d Cir.), *cert. denied,* 434 U.S. 931, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977). But despite its utility as a deterrent, the punitive damage remedy must be reserved, we think, for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. None of the few cases in this court which have discussed the availability of punitive damages for civil rights violations has presented the occasion for adopting an appropriate test. We find guidance in Justice Brennan's separate opinion in *Adickes v. Kress & Co.,* 398 U.S. 144, 233, 90 S.Ct. 1598, 1642, 26 L.Ed.2d 142 (1970) (Brennan, J., concurring in part and dissenting in part):

> To recover punitive damages, I believe a plaintiff must show more than a bare violation of § 1983. On the other hand, he need not show that the defendant specifically intended to deprive him of a recognized federal right, as required by the word "willfully" in 18 U.S.C. § 242, see *Screws v. United States* [325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495], *supra.* . .
> It is sufficient for the plaintiff to show either that the defendant acted . . .
> with actual knowledge that he was violating a right "secured by the Constitution and laws," or that the defendant acted with reckless disregard of whether he was thus violating such a right.

This test, requiring that the defendant acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so, seems to us appropriate.

■ Applying this test to the record in the district court and assuming for present purposes that there was a violation of Cochetti's due process or first amendment liberty rights, we conclude that no award of punitive damages could have been proper. Cochetti was suspended because of alleged communications between him and an informant named Mix. Cochetti's superiors took the position that these communications violated a duty of confidentiality imposed by the regulations of the Office of Special Prosecutor. In his amended complaint Cochetti contended, first, that the communications never took place and, second, that even if some of them did take place, the confidentiality regulations as applied were both overbroad and vague. He urged that a pre-termination hearing at which he could confront the alleged informer was a due process requirement. Thus the complaint charges two possible violations—the lack of a pre-termination hearing and the adoption and application of an invalid regulation on confidentiality. Nowhere in the amended complaint is it alleged, however, that the defendant officials knew such a hearing was required by the due process clause. Indeed, the defendants still dispute this point. Nor does the complaint allege that the defendants had any doubts about the validity of their confidentiality regulations, which they still vigorously defend. Thus if there is any basis for the imposition of punitive damages, it would have to be that the defendants acted in reckless disregard of whatever civil rights were allegedly infringed. But Cochetti does not allege reckless disregard. The amended complaint states no facts from which it could be inferred. The affidavit and attached exhibits in support of the defendants' motion for summary judgment established that they acted in reasonable reliance upon their beliefs (1) that the post-suspension grievance-arbitration proceeding afforded all the due process the law required, and (2) that the confidentiality regulations were valid. Cochetti's affidavit in opposition casts no doubt upon the reasonableness of that belief.

Paragraph 25 of the amended complaint requires our specific attention:

> 25. The defendants acting individually under color of law and conspiring among themselves, by making charges which

they knew or should have known were false and by failing to afford plaintiff a hearing on those charges, deprived plaintiff of liberty and property without due process of law . . . .

Read generously, this paragraph charges that an unnamed defendant knowingly filed or the defendants collectively and knowingly conspired to file a false charge against Cochetti. Presumably this paragraph refers to the defendant's affirmation and Cochetti's denial of the conversations with the informant Mix. If proved, this charge probably would sustain an award of punitive damages. However, the affidavit of John Greecher, the Personnel Director of the Pennsylvania Department of Justice, and the exhibits attached thereto indicate that no such conspiracy existed. Defendant Phillips made a complaint about Cochetti's conduct and defendant Kane acted upon it. Cochetti's affidavit filed in opposition to the motion for summary judgment does not refer to the conspiracy charge and thus implicitly abandons it. Moreover, that affidavit does not allege that any specific defendant knew the Mix charges to be false. Thus we conclude that the district court did not err in granting summary judgment for the defendants.

The judgment appealed from will be affirmed insofar as it granted summary judgment for the defendants on Cochetti's claim for punitive damages. The case will be remanded to the district court with instructions to vacate the judgment in all other respects as moot. Costs taxed against appellant.