663 F.2d 778
 9 Fed. R. Evid. Serv. 352
 Daniel R. WADE, Appellee,
v.
Edward E. HAYNES, Director of Division of Corrections for
Missouri; Walter David Blackwell, Superintendent of Missouri
Intermediate Reformatory, William H. Smith, Corrections
Officer, Appellant, William Schroeder, Officer, M.S.P., Fred
Miles, Officer, M.S.P.
Daniel R. WADE, Appellant,
v.
Edward E. HAYNES, Director of Division of Corrections for
Missouri, Walter David Blackwell, Superintendent
of Missouri Intermediate Reformatory, Appellees,
William H. Smith, Corrections Officer, William Schroeder,
Officer, M.S.P. and Fred Miles, Officer, M.S.P., Appellees.
 Nos. 80-2120, 80-2131.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 17, 1981.
Decided Nov. 9, 1981.
 
 John Ashcroft, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, Mo., argued, for appellant in No. 80-2120 and appellees in No. 80-2131.
 Bradley H. Lockenvitz, Linn, Mo., for Daniel R. Wade.
 Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 Daniel R. Wade, an inmate at the Algoa, Missouri reformatory brought suit under 42 U.S.C. § 1983 against three correctional officers, William H. Smith, William Schroeder, and Fred Miles; Edward E. Haynes, Director of the Missouri Division of Corrections and Walter Blackwell, superintendent at the reformatory. He claimed that on October 27, 1976, he was wrongfully placed in an administrative cell with two other prisoners where he was beaten and sexually assaulted. The district court directed a verdict in favor of Haynes and one of the correctional officers, Miles. Thereafter, the jury entered verdicts for Blackwell and Schroeder, but awarded Wade $25,000 compensatory damages and $5,000 punitive damages in his claim against Smith. Smith has appealed; Wade cross-appeals claiming the trial court erred in failing to grant judgment notwithstanding the verdict in his claim against Blackwell, the superintendent, and one of the correctional officers, Schroeder.
 
 
 2
 On appeal Smith challenges (1) the overall sufficiency of the evidence; (2) the trial court's instruction on cruel and unusual punishment; (3) the trial court's ruling on cross-examination by plaintiff's counsel and closing argument; (4) the exclusion of documentary evidence; (5) the use of expert testimony; and (6) the award of punitive damages. On cross-appeal Wade asserts that there was uncontroverted evidence warranting a directed verdict against Blackwell and Schroeder.
 
 
 3
 Smith's Claims.
 
 
 4
 Smith first challenges the sufficiency of plaintiff's evidence to take the case to the jury. He contends that as a prison official he was immune from liability unless there was evidence that he was guilty of gross negligence or reckless misconduct. See Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).
 
 
 5
 The facts demonstrate sufficient evidence to sustain the verdict against Smith. At the time of the assault Wade was approximately 18 years old, five feet, eight inches tall and weighed approximately 130 pounds. He had previously spent some time in the reformatory's special treatment unit. The special treatment unit is an area secured from the general reformatory population and is used for housing those inmates susceptible to physical abuse from members of the general population. Wade spent some time in punitive segregation for rule violations which occurred during his stay in the special treatment unit; thereafter he was assigned to a cell in the administrative segregation unit of the prison. Schroeder, a correctional officer, placed Wade in a cell on the second floor of the administrative segregation unit with another prisoner from the general population. Later that evening Smith replaced Schroeder and subsequently put a third inmate from the general population in the cell with Wade and the other inmate. The third inmate had been sent to administrative segregation for fighting and it was recommended that he be separated from the general population for his own safety and that of others. Shortly after the third inmate was placed in the cell, Wade charges that both inmates began to harass him and eventually beat and sexually assaulted him. Wade alleges that defendants knew or should have known that he was likely to be assaulted under these circumstances, particularly in light of American Correctional Association standards which recommended single unit housing in administrative segregation units, and the availability of at least one other cell containing only one prisoner.
 
 
 6
 Smith's conduct was such that a jury could reasonably find that he either knew or should have known that the third prisoner, Thompson, had been ordered separated from the other inmates for his own safety and the safety of others. Smith made no effort to check whether another cell was available. Smith knew another prisoner had been beaten to death in his cell during that shift only a few weeks before. Dormitory six was a two-story dormitory with 26 cells on each floor. The cells on the second floor were approximately 65 square feet in size. The only access to the cells on the second floor was through steel doors, locked from the outside, with several small holes at the top of the doors. It was impossible for guards to see an entire cell without opening the door. A reformatory guard testified at trial that experience and common sense dictated that in dormitory six general population inmates and those inmates who had been housed in the special treatment unit be segregated.
 
 
 7
 The Official Immunity Defense.
 
 
 8
 It has been said of the immunity defense that:
 
 
 9
 It does not insulate an official who, although not possessed of any actual malice or intent to harm, is so derelict in his duties that he must be treated as if he in fact desired the harmful results of his inaction.
 
 
 10
 Bogard v. Cook, 586 F.2d 399, 412 (5th Cir. 1978).
 
 We agree with the Seventh Circuit:
 
 11
 In order to state an eighth amendment claim resulting from an attack ... a prisoner must show that prison officials "deliberately deprived" him of his constitutional rights. Deliberate deprivation may result from actual intent to deprive him of his rights or from recklessness in ignoring known threats.
 
 
 12
 Schaal v. Rowe, 460 F.Supp. 155, 157 (E.D.Ill.1978). See Little v. Walker, 552 F.2d 193, 197 n.8 (7th Cir. 1977). We conclude there existed sufficient evidence to demonstrate that Smith recklessly and with callous indifference placed Wade into a dangerous situation.
 
 
 13
 On appeal Smith also challenges the court's instruction relating to the eighth amendment. The court's instruction reads in part:
 
 
 14
 As stated before, the Eighth Amendment to the Federal Constitution provides that no cruel and unusual punishment may be inflicted. In order for an alleged physical injury to constitute cruel and unusual punishment, the injury must constitute physical abuse of such base, inhumane and barbaric proportions as to shock the sensibilities.
 
 
 15
 The court also instructed the jury that they must find the defendant's conduct was either grossly negligent or was an egregious failure to protect the plaintiff and violated his right to be free from cruel and unusual punishment.[1]
 
 
 16
 The challenge made here is that the instructions misled the jury in focusing on the injury itself. Smith argues that the concern should be not whether the injury inflicted was an unnecessary and wanton infliction of punishment but whether there was an egregious failure to protect plaintiff. Thus it is urged that the nature of the injury is relevant only to the question of damages and not to whether there was in fact a constitutional violation by the infliction of a cruel and unusual punishment. Smith thus maintains that this instruction is also inconsistent with the other instructions relating to gross negligence and egregious failure to act. He also now complains that the court erred in defining gross negligence as equivalent to "callous indifference." Smith, relying on Bogard v. Cook, supra, 586 F.2d 399 urges that these terms fail to demonstrate intent as opposed to simple negligence. In sum, the defendants argue that these combined instructions relate to the nature of the injury which determines the cruel and unusual punishment rather than the conduct of the defendants.
 
 
 17
 We must disagree.[2] The instructions must be viewed in their entirety. Instruction number 5, the verdict director, read:
 
 
 18
 Your verdict must be for the plaintiff if you believe:
 
 
 19
 FIRST: Defendants knew or should have known that placing two or more inmates in the same cell in administrative segregation with only one guard on duty in that building made it highly foreseeable that some inmates, and in particular the plaintiff Daniel R. Wade, would be physically attacked and sexually abused, and
 
 
 20
 SECOND: Defendants' conduct was grossly negligent or an egregious failure to protect the plaintiff Daniel R. Wade, and
 
 
 21
 THIRD: Such acts of the defendants were done under the color of the law of the State of Missouri, and,
 
 
 22
 FOURTH: Such acts violated plaintiff's constitutional right to be free from cruel and unusual punishment, and,
 
 
 23
 FIFTH: As a direct result of such conduct, the plaintiff suffered injury.
 
 
 24
 Gross negligence as used in this instruction means a callous indifference or a thoughtless disregard for the consequences of one's act or failure to act.
 
 
 25
 Egregious failure to protect means a flagrant or remarkably bad failure to protect.
 
 
 26
 These instructions make it clear that for plaintiff to recover defendant's acts must have violated plaintiff's right to be free from cruel and unusual punishment. Thus, defendant's action must have been more than negligent, his conduct must have been such that it was done with callous disregard of plaintiff's right not to be punished in an inhumane and base way. The mere placement of plaintiff in the cell with two others from the general population without further incident would not have given legal sustenance to his claim under the eighth amendment. It was the callous nature of this act which recklessly exposed him to inhumane treatment which constituted the actionable wrong. The inhumane treatment was part of the wrong in the same sense as if Smith had committed the harm himself.
 
 
 27
 We find no prejudicial error in the instructions.
 
 
 28
 Smith next urges that the court erred in permitting certain questions by plaintiff's counsel on cross-examination as well as comments concerning this subject matter during closing argument.
 
 
 29
 Smith's objections include: (1) Wade's counsel's cross-examination of him relating to an alleged unwritten policy followed by prison officials regarding the segregated celling of black and white inmates while in administrative segregation; (2) the question "But you can mix homosexuals with people who aren't homosexuals?" and (3) a question relating to the earlier murder of a black inmate by his black cellmate, which occurred a few weeks prior to the assault on Wade.
 
 
 30
 Smith argues that these questions and the subsequent testimony were unfairly prejudicial under Fed.R.Evid. 403 and should not have been admitted.
 
 
 31
 A trial judge can and should exclude evidence when convinced that it will create a danger of prejudice outweighing its probative value. E. I. DuPont DeNemours v. Berkley & Co., Inc., 620 F.2d 1247, 1272 (8th Cir. 1980). However, rule 403 of the Federal Rules of Evidence does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis. Carter v. Hewitt, 617 F.2d 961, 972 (3rd Cir. 1980).
 
 
 32
 Considering that this case involved a homosexual rape and in light of Wade's various assertions, including the allegation that another, safer, cell was available and that he was not celled there because of an unwritten policy of segregating inmates, the questions relating to those matters do not appear unfairly prejudicial.
 
 
 33
 Smith also alleges that the trial court erred in excluding from evidence a letter allegedly written by Wade which he sought to introduce for impeachment purposes. Smith contends that the letter was admissible under Fed.R.Evid. 613(b) as extrinsic evidence of a prior inconsistent statement. The trial court excluded the letter, which was dated July 25, 1978, on the ground that it was written long after the incident in question and was irrelevant. It is our rule that the trial court's ruling on the admissibility of evidence will not be disturbed absent a clear and prejudicial abuse of discretion. E. I. DuPont DeNemours v. Berkley & Co., Inc., supra, 620 F.2d at 1272. The letter in question appears to have been written by Wade and was directed to the prison classification board. In it Wade makes various statements regarding his future conduct which imply that his conduct prior to that date had been less than desirable. However, there appears to be nothing in the letter or in the transcript which demonstrates a clear abuse of discretion by the trial court in excluding the letter.
 
 
 34
 Smith also claims the district court erred in permitting testimony by an expert witness, David Musacchio, who was called by Wade as an expert in corrections administration. The testimony was as follows:
 
 
 35
 Q. You mentioned before that you could compare this with overcrowding of a hospital. Well, you might have some putting people in the same rooms in the hospital. Could you draw that analogy out even further? If you have to double cell, if you have to double cell in an institution, do you look at the background of the inmates before you put them in that cell?
 
 
 36
 A. I would think a prudent administrator would, yes.
 
 
 37
 Q. And if he, in fact, does not look at the background, is it-is that egregious failure?
 
 
 38
 ....
 
 
 39
 A. Yes.
 
 
 40
 Smith asserts this question improperly calls for a legal conclusion and, since the witness was not qualified as a legal expert, testimony on that issue was improper. It is settled, however, that testimony otherwise admissible is not inadmissible because it embraces an ultimate issue to be decided by the trier of fact. Fed.R.Evid. 704.
 
 
 41
 In Nielson v. Armstrong Rubber Co., 570 F.2d 272 (8th Cir. 1978) this court held it was not error for an expert witness to offer testimony regarding the cause of a defect in a tire. In that case the court acknowledged the wide discretion of the trial court in determining the admissibility of expert testimony. Id. at 276. It also stated "(t)he extent of a witness' knowledge of matters about which he offers to testify go to the weight rather than the admissibility of testimony." Id. at 277. Cognizant of Nielson, Smith would distinguish this case on the ground that a legal conclusion was involved here, rather than a factual issue. He relies upon Stoler v. Penn. Central Transp. Co., 583 F.2d 896 (6th Cir. 1978) which upheld the trial court's exclusion of testimony by a civil engineer whether a particular railroad crossing was "extra hazardous." Although the Sixth Circuit did characterize the question as calling for a legal opinion, it appears to have based its decision on the broad discretion accorded the trial judge in such circumstances.[3]
 
 
 42
 We agree that the issue is a close one.[4] In the sense that the question attempted to have the witness testify that defendant's conduct violated a constitutional norm, the form of the question was improper in seeking a pure legal conclusion. See Fed.R.Evid. 701. On the other hand the jury had the right to be informed concerning prison policy and to consider evidence as to whether the failure to review the background of prisoners in making cell assignments amounted to a breach affecting their personal safety. In view of the overall testimony we do not find the trial court's ruling an abuse of discretion or "manifestly erroneous." Soo Line R. Co. v. Fruehauf Corp., 547 F.2d 1365, 1374 (8th Cir. 1977).
 
 
 43
 Smith urges that the trial court erred in permitting improper remarks by plaintiff's counsel during closing argument. He asserts that the "tenor" of the argument exceeded all permissible bounds. The statements to which he specifically refers are: (1) a reference to defendants leaving a "legacy of blood, tears, rape and murder;" and (2) the following statement by Wade's counsel:
 
 
 44
 I'm asking you send a message to Danny Wade, as a 17 year old boy in prison, 18 when he was raped, his Dad came here and testified about it, about what he was like. Some of you may be fathers and I'm a father. With a little bad luck, my boy might sometime have to go to an institution like that for robbery or theft.... for burglary, and he won't deserve to be raped for that."
 
 
 45
 Although we do not condone such argument, particularly counsel's hypothetical personal references, we do not find the comment so inflammatory or flagrant as to unduly and materially affect the verdict of the jury. See Wichmann v. United Disposal, Inc., 553 F.2d 1104, 1107 (8th Cir. 1977).
 
 
 46
 Damages.
 
 
 47
 Also under attack on appeal is the award of $5,000 in punitive damages. Smith challenges the instruction given the jury which read:
 
 
 48
 In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured person punitive and exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.
 
 
 49
 If you find the issues in favor of the plaintiff, and if the conduct of one or more of the defendants is shown to be a reckless or callous disregard of, or indifference to, the rights or safety of others, then you may assess punitive or exemplary damages in addition to any award of actual damages.
 
 
 50
 He argues that the court's instructions on the issues of liability and punitive damages are essentially the same and insists that, to be in keeping with the purpose of punitive damages, a more stringent standard is required.
 
 
 51
 Generally, punitive damages are available in section 1983 actions where there are aggravated circumstances. Konczak v. Tyrrell, 603 F.2d 13, 17 (7th Cir. 1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); Spence v. Staras, 507 F.2d 554 (7th Cir. 1974). In construing punitive damages some courts have held that only a showing of malice or actual intent will support an award of punitive damages. Morrow v. Igleburger, 584 F.2d 767, 769 (6th Cir. 1978), cert. denied, 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979); Smith v. Losee, 485 F.2d 334, 345 (10th Cir. 1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974); Pierce v. Stinson, 493 F.Supp. 609, 612 (D.Tenn.1979). Still others have required intent or reckless disregard. Konczak, supra, 603 F.2d at 17; Cochetti v. Desmond, 572 F.2d 102, 105 (3rd Cir. 1978). In Guzman v. Western State Bank this court held that punitive damages may "be awarded in civil rights actions where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct or a reckless disregard for the rights of the plaintiff." 540 F.2d 948 at 953. In a separate opinion in Adickes v. S. H. Kress, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) Justice Brennan stated "(t)o recover punitive damages, I believe a plaintiff must show more than a bare violation of § 1983." Id. at 233, 90 S.Ct. at 1642. (Brennan, J.; concurring in part and dissenting in part). However, in that opinion he goes on to state that a showing of knowledge or reckless disregard for the constitutional rights of a plaintiff would support such an award. Id.
 
 
 52
 Viewed in light of the more stringent test for determining liability in section 1983 actions involving failures to act or omissions by prison officials the question becomes whether punitive damages are a necessary concomitant of a finding of liability. At least one court has suggested that it is. Clappier v. Flynn, 605 F.2d 519, 533 (10th Cir. 1979). But the impact of that language is undermined by the fact that the plaintiff in that case sought only compensatory damages. The Fifth Circuit has taken the strongest position yet articulated in upholding an award of punitive damages against a county sheriff, concluding that "(i)n order to find cruel and unusual punishment, the jury must have found egregious conduct capable of supporting an award of punitive damages." Fielder v. Bosshard, 590 F.2d 105, 111 (5th Cir. 1979).
 
 
 53
 In Harris v. Harvey, 605 F.2d 330, 340 (7th Cir. 1979), cert. denied, 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980) the court upheld an award of punitive damages against a municipal judge for conduct amounting to a "racially motivated campaign" to discredit the plaintiff, a police official. That court found the punitive damages justified in view of the jury's finding that the judge had acted "maliciously, wantonly or oppressively." Id.
 
 
 54
 While these cases suggest that a finding of liability automatically triggers the consideration of punitive damages that question is appropriately left to the broad discretion of the jury. City of Newport v. Fact Concerts, --- U.S. ----, ----, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981); Guzman v. Western State Banks, 540 F.2d 948, 953 (8th Cir. 1976). As the Third Circuit recently stated: "the allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact." Scott v. Plante, 641 F.2d 117, 135 (3rd Cir. 1981). But that opinion also implies that there must be some minimal showing beyond that required for liability to justify such an award: "(w)hen the evidence is simply too sparse to determine the punitive damages issue one way or another, and plaintiff bears the burden of proving malice or wantonness, perhaps a jury award of punitive damages cannot stand." Id.
 
 
 55
 The Supreme Court in Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), although not expressly approving or disapproving punitive damages in section 1983 cases, did indicate, however, if such were approved the predicate for recovery would require proof of "malicious intent." Malicious conduct has long been defined so as to include "culpable recklessness or a willful and wanton disregard" of another's rights. See e. g., Galloway v. General Motors Acceptance Corp., 106 F.2d 466 (4th Cir. 1939). As we have earlier indicated in this opinion liability in civil rights cases may be incurred even though an official does not possess "any actual malice or intent to harm (but) is so derelict in his duties that he must be treated as if he in fact desired the harmful results of his inactions." See Bogard v. Cook, supra. This is so because deliberate intent may be predicated on factual circumstances which are so egregious and reckless that the natural consequences of the actor's conduct implies the requisite malicious intent to do wrong. See Estelle v. Gamble, 429 U.S. 97, 105-06, 97 S.Ct. 285, 291-92, 50 L.Ed.2d 251 (1976). Although the record here shows no evidence of ill will or spite by Smith against Wade, it does demonstrate a reckless and total disregard for the safety of prisoners in his care. Thus we conclude a finding of malice may be found from an official's reckless and callous disregard of known dangers. In the present case Smith knew or should have known that Thompson had been ordered separated from the other inmates for his safety and that of others. The record also indicates that Smith made little or no effort to determine whether another cell was available or that he ever checked on the inmates during his shift. This, coupled with the knowledge that Elijah Smith was beaten to death in his cell during Smith's shift only a few weeks before, could conceivably persuade the jury of a need for some deterrent to avoid further conduct of this type. The Supreme Court has recently suggested that deterrence is an even more important purpose of section 1983 than retribution. City of Newport v. Fact Concerts, supra, --- U.S. at ----, 101 S.Ct. at 2759.
 
 
 56
 Upon review the amount of punitive damages may be disturbed only when it appears, in the judgment of the reviewing court to be unfair and shocking. Guzman v. Western State Bank, supra, 540 F.2d at 954. We find the award of punitive damages justifiable under the evidence.
 
 
 57
 Wade's Cross-Appeal.
 
 
 58
 Wade initiated this cross-appeal charging that the district court erred in refusing to grant directed verdicts against defendants Blackwell and Schroeder. He maintains that there was uncontroverted evidence that both Blackwell and Schroeder committed an egregious failure to protect him from assault. A review of the record reveals that this contention is without merit. Defendant Blackwell testified only in regard to administrative practices and policies. Schroeder testified that he moved Wade from punitive segregation to administrative segregation on October 27, 1976, and placed Wade in the cell with one other inmate. It was for the jury to decide whether the overall evidence warranted a verdict in favor of the plaintiff as to these defendants. The evidence was conflicting and the court properly submitted the cases to the jury. There is nothing in the testimony of either defendant or in the record itself which would require reasonable men to reach only one verdict. Hladyshewski v. Robinson, 557 F.2d 1251, 1252 (8th Cir. 1977).
 
 
 59
 The judgment of the district court is affirmed. Plaintiff Wade shall pay the costs on the cross-appeal.
 
 
 60
 FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 61
 I concur in the majority's opinion holding that a qualified immunity will not shield a prison official from liability for injuries caused from a "callous indifference to a prisoner's rights." I dissent from that part of the opinion allowing punitive damages without a finding of actual malice. The decision of the majority on the latter point is directly contrary to a part of the holding of Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Furthermore, even if gross negligence or recklessness could substitute for malice in an award of punitive damages, the jury was improperly instructed. Finally, the evidence in this case would not support a finding of either actual malice or gross negligence or recklessness.
 
 
 62
 The Supreme Court has never expressly held that punitive damages are available in § 1983 actions. Nevertheless, lower courts have often allowed the recovery of punitive damages. See cases cited p. 785 ante. Even without deciding this issue, the Supreme Court has included in its holdings a standard for the award of punitive damages under § 1983. In Carey, the Court held that malice on the part of a defendant is a prerequisite to an award of punitive damages.
 
 
 63
 The Court in Carey avoided the question of whether punitive damages are proper by holding that if they were, they would be proper only when malice is present. The Court stated:
 
 
 64
 Although we imply no approval or disapproval of any of these cases (allowing punitive damages for § 1983 violations,) we note that there is no basis for such an award in this case. The District Court specifically found that petitioners did not act with a malicious intention to deprive respondents of their rights or to do them other injury ....
 
 
 65
 435 U.S. at 257 n.11, 98 S.Ct. at 1049 n.11 (emphasis added).
 
 
 66
 Instead, the district court in Carey found that defendants "should have known that (their conduct) would violate procedural due process." 435 U.S. at 251, 98 S.Ct. at 1046. The Supreme Court allowed an award of compensatory damages, despite the qualified immunity of defendants, because they should have known that they were violating plaintiffs' rights. The additional element of malice was necessary before punitive damages could be awarded; the Court withheld judgment on whether punitive damages are permissible even when malice is present.
 
 
 67
 There is a distinction between the type of wrongdoing necessary to cast away the shield of qualified immunity and to justify an award of punitive damages. This distinction is overlooked by the majority. P. 785 ante. When the findings in Carey are laid side by side with those in the case before us, Carey clearly controls its disposition. In Carey, two students in Chicago public schools received twenty-day suspensions for rules violations. Neither received a hearing in connection with the suspensions. The district court held that the suspensions violated the procedural due process rights of the students, and defendants did not challenge that holding. In the instant case, the district court found that Smith violated Wade's right to be free from cruel and unusual punishment. The Carey district court found that defendants " 'should have known that a lengthy suspension without any adjudicative hearing of any type' would violate procedural due process." 435 U.S. at 251, 98 S.Ct. at 1046. In the instant case, the jury was instructed to find for the plaintiff if:
 
 
 68
 Defendants knew or should have known that placing two or more inmates in the same cell in administrative segregation with only one guard on duty in that building made it highly foreseeable that (Wade) would be physically attacked and sexually abused, and
 
 
 69
 ....
 
 
 70
 ... Such acts violated plaintiff's constitutional right to be free from cruel and unusual punishment ....
 
 
 71
 P. 782 ante.
 
 
 72
 The Supreme Court in Carey did not disturb the district court's finding that defendants were not entitled to qualified immunity because they should have known that their conduct would deprive plaintiffs of constitutional rights. The district court relied on Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). In the instant case, the majority finds that Smith is not entitled to qualified immunity because of his callous indifference to Wade's rights. Pp. 781-782 ante. I agree with that decision.
 
 
 73
 In Carey the district court held that defendants "did not act 'with the malicious intention to cause a deprivation of constitutional rights or other injury ....' " 435 U.S. at 251 n.6, 98 S.Ct. at 1046 n.6, quoting Wood v. Strickland, 420 U.S. at 322, 95 S.Ct. at 1001. This court finds "no evidence of ill will or spite by Smith." Pp. 785-786 ante. The Supreme Court in Carey held "there is no basis for such an award (of punitive damages) in this case. The District Court specifically found that petitioners did not act with a malicious intention." 435 U.S. at 257 n.11, 98 S.Ct. at 1049 n.11. The majority would award punitive damages even without a showing of actual malice.
 
 
 74
 The cases cited by the majority for the proposition that reckless disregard of a plaintiff's constitutional rights can be a basis for an award of punitive damages are inappropriate. Cochetti v. Desmond, 572 F.2d 102 (3d Cir. 1978), and Guzman v. Western State Bank of Devils Lake, 540 F.2d 948 (8th Cir. 1976), both predated Carey. Furthermore, the Cochetti court determined that punitive damages were not in order; it did not have to decide if mere recklessness or callousness is sufficient. 572 F.2d at 106.
 
 
 75
 The other case cited by the majority, Konczak v. Tyrrell, 603 F.2d 13 (7th Cir. 1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980), also fails to support the majority position. At the page cited by the majority, the court requires "intent or reckless disregard" only to get beyond the qualified immunity defense. 603 F.2d at 17. When the court discussed punitive damages, it cited Carey and six lower court cases supporting the malice requirement. 603 F.2d at 18.
 
 
 76
 The majority argues that malice includes recklessness or a willful and wanton disregard of another's rights. None of the cases cited by the majority, see pp. 785-786 ante, support this proposition.[1] Indeed, two of the majority's cases refer to malice as something distinct from recklessness. See Bogard v. Cook, 586 F.2d 399, 411 (5th Cir. 1978); Galloway v. General Motors Acceptance Corp., 106 F.2d 466, 471 (4th Cir. 1939). The Supreme Court citation offered by the majority makes no reference to malice and the case deals only with liability under § 1983, not punitive damages. Estelle v. Gamble, 429 U.S. 97, 105-06, 97 S.Ct. 285, 291-92, 50 L.Ed.2d 251 (1976).
 
 
 77
 The majority would have been correct in arguing that recklessness or gross negligence, if outrageous, as well as malice will often support a claim for punitive damages. See, e. g., Restatement (Second) of Torts § 908(2) (1979). However, we are not dealing with the common law of torts. We are dealing with interpretation of a federal statute. Although under a narrow reading Carey may not always require actual malice, the case at least requires application of different standards for liability and an award of punitive damages. Contrary to the instructions to the jury, mere callousness or recklessness should not be sufficient to support an award of punitive damages under § 1983. The majority is not following Carey's mandate to require more egregious conduct when punitive damages are sought than is necessary to surmount the qualified immunity doctrine.
 
 
 78
 Even if the majority's view of the law is correct, the jury was not instructed in accordance with that view. The majority concluded that malice could be inferred from an official's "reckless and callous disregard" of known dangers. Pp. 785-786 ante. On the other hand, the jury was told it could award punitive damages if there was a "reckless or callous disregard" of the safety of others. Pp. 784-785 ante (emphasis added). Under the majority's view a remand is in order to determine whether Smith acted recklessly. Of course, a remand would not be necessary if the majority concludes that not only does "malice" include "recklessness" but it includes "callousness" as well, and either suffices for the other.
 
 
 79
 Finally, the facts of this case do not support a finding of recklessness or gross negligence. Out of fifty-two cells in the dormitory, only one housed a single prisoner. In light of the difficulties of administering a crowded prison, Smith's conduct cannot be characterized as gross negligence or recklessness.
 
 
 80
 Because of the controlling precedent regarding the award of punitive damages as well as the facts of this case, I dissent from the award of punitive damages. I join the rest of the opinion of the majority.
 
 
 
 [1]
 The court defined gross negligence as "a callous indifference or thoughtless disregard for the consequences of one's act or failure to act" and an egregious failure to protect as "a flagrant or remarkably bad failure to protect."
 
 
 [2]
 The objection concerning the use of "callous indifference" is specious. See Clappier v. Flynn, 605 F.2d 519, 531 (10th Cir. 1979); Fielder v. Bosshard, 590 F.2d 105 (5th Cir. 1979). See also Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In the instruction conference with the court defendant's counsel stated:
 I think when we are talking about a civil rights case, we are talking about callous, assuming gross negligence is a standard, to callous indifference to their constitutional rights and not simply as phrased here, to the consequences of one's act or failure to act.
 
 
 [3]
 Smith also relies on Marx & Co. Inc. v. Diners Club, Inc., 550 F.2d 505 (2d Cir. 1977), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 in which the Second Circuit held that it was error not to exclude the testimony of a securities expert who was also a lawyer regarding his opinion of the legal obligations under a contract. The court in that case appeared to base its decision on the fact that the witness not only construed the contract at issue but repeatedly gave his conclusions as to the legal significance of various facts adduced at trial
 
 
 [4]
 We also note, as stated by Smith's counsel, the question related to the administrator's responsibility and not Smith's
 
 
 [1]
 In the special area of defamation, the Court has adopted a definition of actual malice which includes recklessness. N. Y. Times v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964)