**Dewey Miles MULLEN, Jr., Plaintiff,**

v.

**UNIT MANAGER WEBER, et al., Defendants.**

**Civ. No. 89–0112.**

United States District Court, M.D. Pennsylvania.

Jan. 4, 1990.

Dewey Miles Mullen, Jr., pro se.

Lorna N. Graham, U.S. Attorney's Office, Scranton, Pa., for defendants.

### MEMORANDUM

NEALON, District Judge.

#### A. *Background*

Plaintiff, an inmate at USP–Lompoc, California, filed the above-captioned *Bivens*[1] action pursuant to 28 U.S.C. § 1331. Plaintiff alleged that he was assaulted at U.S. P.–Lewisburg by fellow inmates after making repeated requests of correctional officers to protect him from such an assault by at least being transferred to another unit.

On June 6, 1989, defendants filed a motion to dismiss, or, in the alternative, for summary judgment. *See* document 16 of the record. Defendants supported their motion with a brief and other documentation, pursuant to Local Rule 401.5. *See* documents 17–18 of record. Plaintiff countered with a short brief, an affidavit, and other documentation of his own. *See* doc-

ument 2 of record; *see also* Local Rule 401.6.

Upon receipt of the proper documentation and briefs from all parties, the U.S. Magistrate considered the motion to dismiss or, in the alternative, for summary judgment. The Magistrate recommended to this court to dismiss, or, in the alternative, to grant summary judgment in favor of the defendants. While the court will not adopt the analysis of the Magistrate, it will grant defendants' motion for summary judgment for other reasons.

The court accepts the factual representations of both parties in their briefs and affidavits as accurately reflected in the Magistrate's Report. *See* document 21 of record, Report of Magistrate, at 3–6. Therefore, it is unnecessary, for our purposes, to reiterate these pertinent facts, but the court will refer to them when it is relevant to the analysis.

#### B. *The Report of the Magistrate*

The Magistrate in his report recommended that defendants' motion to dismiss or in the alternative for summary judgment be granted. He explained that plaintiff observed two inmates stealing from his locker and allegedly advised defendant Smith of the incident. At that time, plaintiff contended that he had requested a transfer to another unit, but Smith failed to transfer him. The plaintiff again observed the same two inmates stealing from his locker, but this time, feared the two inmates had known that he observed them stealing. Plaintiff again informed Smith of the second incident and that he feared for his safety. He once again requested a transfer, but Smith did not act upon the request. Plaintiff further contended that he pleaded with defendant Weber to transfer him. Weber informed defendant Wells of the situation, but neither acted upon the request. On November 13, 1988, plaintiff was allegedly assaulted by the two inmates he observed. Document 21 of record, Report of Magistrate, at 3–4. The Magistrate

---

**1.** *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91     S.Ct. 1999, 29 L.Ed.2d 619 (1971).

noted that plaintiff asserted that defendant Campbell was aware of the situation, but also failed to act, and, in fact, assisted in a coverup of the problem. *Id.* at 4.

After considering the allegations of plaintiff, the Magistrate considered the affidavits and briefs submitted by both sides. *See id.* at 4–6. In defendants' brief and affidavits, they averred a quite different scenario of facts. They painted plaintiff's request to be transferred as a manipulative act to gain a more desirable housing unit. They indicated that plaintiff was housed in the F Block in the SAN–East unit, which was less desirable housing because it was comprised of only dormitories and, thereby offered little privacy. Plaintiff specifically requested a transfer to J Block in SAN–West unit, which was more desirable and very popular among the inmates. *See* document 17 of record, Brief at 2; Declarations of J. Weber, W. Smith, and W. Campbell. Defendants Smith and Campbell forwarded the request to defendant Weber. After learning that he could be transferred to J Block only by first being in another SAN–West Block, plaintiff approached defendant Weber and requested a transfer to I Block in the SAN–West unit claiming he had friends in I Block. *Id.,* Brief at 3; Declarations of W. Smith, W. Campbell, and J. Weber at ¶ 4. Weber informed plaintiff that he lacked authority to transfer him to a SAN–West Block, and that he should request such a transfer from a Unit Manager in the SAN–West unit. *Id.,* Declaration of J. Weber at ¶ 4.

Plaintiff, once again, requested a transfer to I Block, explaining to Weber that he had witnessed an inmate(s) stealing from his locker and that he suspected the thief(s) were aware of the plaintiff's observation. *Id.,* Brief at 3, Declaration of J. Weber at ¶ 4. Weber offered him an immediate transfer to E Block, but plaintiff refused and again requested a transfer to I Block. Weber suggested to plaintiff that he should seek protective custody status in the Special Housing Unit, but plaintiff rejected this also. *Id.,* Declarations of W. Smith and W. Campbell.

In late September, 1988, the SAN–West Unit Manager informed Weber that plaintiff would be accepted temporarily into I Block before being assigned to H Dormitory, and finally J Block. When informed of this arrangement, plaintiff withdrew his request for an immediate transfer to I Block. Document 17 of record, Brief at 4, Declaration of J. Weber at ¶ 5.

In November, 1988, plaintiff informed Weber that he "had a deal" for the SAN–East and SAN–West Unit Managers. Plaintiff proposed a transfer to I Block if his name was placed at the top of the inmate waiting list for the J Block. Both Unit Managers rejected this proposal as being unfair to the other inmates. *Id.* Declaration of J. Weber at ¶ 6.

Plaintiff contested defendants' assertions through, *inter alia,* an affidavit. He contended:

"[T]he defendants, never, offered the plaintiff protective custody. If they had, there would have to be a Waiver signed by the plaintiff refusing it—and relieving defendants of the responsibility for plaintiff's safety and welfare. There is no such waiver. Just like there is no such writing or record of any type of a refusal for the plaintiff to move to another unit 'any' other unit. The only writing ever made was made by plaintiff requesting to move. Just as the same request was made several times in 'oral' statements to the defendants 'made by this plaintiff' for a period of some (2) months—he pleaded to be moved to prevent the problem.

\* \* \* \* \* \*

"[T]he defendants have not denied that plaintiff was assaulted. But rather have tried to shift the 'responsibility to the plaintiff' for being assaulted. Defendants have not denied that plaintiff came to each of them per this problem—but rather they perjured themselves per the outcome of the conversation."

Document 20 of record, Affidavit of D. Mullen.

After considering the evidence presented in support of and in opposition to the defendants' motion for summary judgment, the

Magistrate concluded that judgment should be entered in favor of defendants. He determined that while plaintiff did dispute defendants' assertion that plaintiff was offered a transfer to protective custody, he did not dispute that defendants offered him a transfer to another block at the prison. Document 22 of record, Report of Magistrate at 6. His latter determination relied on the fact that plaintiff merely stated "that there exists no writing to this effect." *Id.* Also the Magistrate concluded that, "[m]ore importantly, in his affidavit plaintiff does not indicate that any actions taken by the defendants were taken in bad faith." *Id.* Consequently, the Magistrate concluded that plaintiff failed "to show the defendants were intentionally, deliberately, or recklessly indifferent to his safety" and, therefore "failed to establish the existence of elements essential to his case." *Id.* Accordingly, he recommended that the court grant defendants' motion to dismiss or, in the alternative, for summary judgment.

■ The court will not embrace the analysis of the Magistrate but will ultimately grant defendants' motion for summary judgment. The court finds the Magistrate's analysis to be slightly flawed in two respects. First, the court disagrees with the legal standard which the Magistrate imposed upon plaintiff. To be successful under the relevant law, the plaintiff must prove that there was either "intentional conduct", "deliberate or reckless indifference" to his safety or "callous disregard" on the part of prison officials. *Davidson v. O'Lone*, 752 F.2d 817, 828 (3d Cir.1984), *aff'd sub nom., Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). The Magistrate, however, implied that plaintiff must exclusively show intentional conduct when he indicated that plaintiff did not prove "bad faith" on the part of the prison officials. This is incorrect. While the plaintiff may prove intentional conduct to satisfy the standard, he may also prove a lesser, albeit stringent, standard, of "deliberate or reckless indifference" or "callous disregard".

Second, the court disagrees with the Magistrate's interpretation of plaintiff's affidavit. Document 22 of record, Report of Magistrate at 5–6. He correctly concluded that plaintiff in his statement disputed that he was offered a transfer to protective custody, but we believe it is not clear that plaintiff did not dispute that he was offered a transfer to another Block. *Id.* at 6. Such a conclusion appears to be an unduly restrictive interpretation of plaintiff's statement. The court believes he misinterpreted plaintiff's statement when he concluded that plaintiff was merely asserting that there existed no writing indicating an offer to transfer plaintiff. Rather, plaintiff's statement may be interpreted as an indication that he did not refuse a transfer to another Block when it was offered to him, thereby implying that he was never offered a transfer. He referred to the absence of a writing that he refused to move to another unit but also added that he continually requested orally "to be moved to prevent the problem." Although the plaintiff did not express this in a concise and clear manner, the court must be somewhat lenient in the consideration and interpretation of the *pro se* plaintiff's affidavit. *Cf. Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (*pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers").

### C. *Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment*

Defendants filed a motion to dismiss or, in the alternative, for summary judgment. Because the court considered affidavits and exhibits, which are matters outside the scope of the pleadings, the motion to dismiss is automatically converted into one for summary judgment. *Moreland v. Western Pa. Interscholastic Athletic League*, 572 F.2d 121, 127 (3d Cir.1978); *see Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." Fed.R. Civ.P. 56(c); *see also Peterson v. Lehigh Valley District Council,* 676 F.2d 81, 84 (3d Cir.1982); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976); *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). A genuine issue of a disputed material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). When considering whether a genuine issue of material fact exists, the court must embark on a two-prong inquiry: (1) whether a material fact is presented; and (2) whether there is a genuine issue as to the material fact. First, a fact is material if it may "affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. However, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10 A.C. Wright, A. Miller, and M. Kane. *Federal Practice and Procedure,* § 2725 at pp. 93–95 (1973)). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48, 106 S.Ct. at 2509–10 (emphasis in original).

For the non-movant to defeat a summary judgment motion, he must successfully overcome the second prong of the inquiry which requires the dispute about a material fact to be "genuine." To evince the genuineness of the dispute, he must demonstrate that "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.[2]

Upon examining defendants' motion and supporting documents and plaintiff's brief in opposition and supporting documents, the court is cognizant that some facts are in dispute, while others are not. *See supra* pp. 642–43 (the court's analysis regarding plaintiff's alleged refusal of a transfer). While some facts in genuine dispute are not material in this case because they do not affect the outcome of the suit, the court finds that two undisputed facts do exist which are crucial to the resolution of the summary judgment motion. The fact that plaintiff did not disclose the identity of the alleged perpetrators stealing from his locker went uncontested. Indeed, plaintiff even acknowledged his refusal to disclose the identity of these inmates. *See* document 20 of record, Exhibit G at 5. *See* document 20 of record; document 17 of record, Declaration of Weber at ¶ 6; Declaration of Campbell at ¶ 6; Defendant's Brief at 4. It was also undisputed that plaintiff was never actually threatened. Plaintiff indicated to the prison officials that he feared for his life, but he never asserted that any threat was made. Plaintiff, through his subjective fear, surmised that the alleged perpetrators would assault him simply because they noticed him observing them pilfering from his locker. Consequently, while the officers may have been aware that plaintiff was concerned about his safety, he never identified the persons he allegedly feared and did not claim that they had threatened him in any way. Therefore, the officers would have based their judgment on plaintiff's unsupported contention that he was in danger. It must be remembered that we must look to defendants' response to the information on hand prior to the actual assault.

Since the court is satisfied that there is no "genuine issue of material fact," the only remaining issue to consider in disposing of defendant's motion is whether defendants are entitled to judgment as a matter of law. The court must consider defendants' summary judgment motion in light of the relevant law. The relevant law implicated in this case involves plaintiff's right to personal security within the confines of the prison. It is well-established that an inmate has a right to personal security protected by the United States Constitution. *See, e.g., Riley v. Jeffes,* 777 F.2d 143 (3d Cir.1985); *Owen v. Haas,* 601 F.2d 1242, 1249 (2d Cir.) *cert. denied,* 444

---

**2.** During the summary judgment process, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *see generally Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). Indeed, prison officials may be vulnerable to liability when an inmate is assaulted by another inmate, "if there was intentional conduct, deliberate or reckless indifference to prisoner's safety, or callous disregard on the part of the prison officials." *See Davidson,* 752 F.2d at 828. Mere negligence on the part of the prison officials is insufficient to create such liability. *Id.* Under the circumstances examined above, the court finds that defendants did not act with "intentional conduct", "deliberate or reckless indifference", or "callous disregard".

Prison officials are presented with an arduous task when they are called upon to discern legitimate from illegitimate requests for a transfer within the prison. In an ideal world, prisoners would request a transfer based on a sincere fear of physical harm upon which prison officials could rely. However, in a more realistic world, prisoners may feign their fear of physical harm simply to manipulate a transfer. The reasons vary for prisoners to use such fear as a ruse to obtain a transfer—to dorm with a friend and/or to obtain better living quarters are examples. Therefore, when a prisoner requests a transfer because he fears for his life, prison officials are required to determine the credibility of his fear.[3]

In many cases, such as the instant one, federal courts are asked to review the administrative decisions made by prison officials (*i.e.,* whether a prisoner's constitutional rights were violated by not being transferred). In so doing, federal courts have traditionally adopted a policy of judicial restraint in the problematic area of prison administration. *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983); *Rizzo v. Goode,* 423 U.S. 362, 379,

96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976); *Procunier v. Martinez,* 416 U.S. 396, 404–405, 94 S.Ct. 1800, 1807–08, 40 L.Ed.2d 224 (1974); *Plyler v. Evatt,* 846 F.2d 208, 212 (4th Cir.1988); *Duran v. Elrod,* 760 F.2d 756, 759 (7th Cir.1985). Absent a constitutional violation, managerial decisions regarding the prison shall be deferred to the appropriate prison officials.

■ The court, in this case, finds that a constitutional violation did not occur and, thus, it will not interfere with the prison officials' determination not to transfer plaintiff. The prison officials' conduct would rise to the level of a constitutional violation only "if there was intentional conduct, deliberate or reckless indifference to prisoner's safety, or callous disregard on the part of the prison officials." *Davidson,* 752 F.2d at 828; *see, e.g., Wade v. Haynes,* 663 F.2d 778, 780–818 (8th Cir. 1981), *aff'd on other grounds sub nom., Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (correctional officers were liable for placing the prisoners in a dangerous situation in which it was highly forseeable that an assault would occur); *Curtis v. Everette,* 489 F.2d 516 (3d Cir. 1973) (prisoner may prove "intentional conduct" by prison officials who prevented him from defending himself when he was assaulted by another prisoner). Even assuming that all plaintiff's assertions are true, the decision of the prison officials not to transfer plaintiff was a legitimate and reasoned one under the circumstances. It is undisputed that plaintiff merely requested a transfer claiming that he feared for his life, and that he neither disclosed the identity of the alleged perpetrators nor indicated that either threatened him. Therefore, the naked exclamation of fear by plaintiff, without providing more information, may rationally lead the prison officials to legitimately deduce that plaintiff was

---

**3.** Prisoners cannot be transferred from one part of the prison to another whenever they desire a transfer. Prison officials today are confronted with numerous problems such as overcrowding, resulting in lack of space, limited financial resources, and insufficient manpower. Consequently, prison officials lack the capabilities to transfer prisoners upon request, regardless of

the apparent immediacy of the situation. Instead, these officials must make credibility determinations so that prisoners who actually require a transfer (*i.e.* ones who are in danger) will be rightfully transferred. In so doing, the prison can operate more efficiently and prison officials can optimize their resources.

attempting to manipulate a transfer.[4] Consequently, the court finds that defendants did not act with "intentional conduct", "deliberate or reckless indifference" or "callous disregard".

On the basis of the undisputed facts and the legal analysis set forth in this Memorandum, the court concludes that defendant is entitled to summary judgment as a matter of law. An appropriate Order will follow in accordance with this Memorandum.

### ORDER

NOW, this 4th day of January, 1990, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Defendants' motion for summary judgment is granted.

(2) Judgment is entered in favor of defendants and against plaintiff.

(3) Any appeal from this order will be deemed frivolous, lacking in probable cause and not in good faith.

(4) The Clerk of Court is directed to close the case.

---

**4.** The fact that plaintiff did not disclose the identity of the alleged perpetrators prevented the prison officials from adequately investigating the incident. Indeed, if the identities were revealed to the officials, it may have assisted them in determining whether the incidents actually occurred, especially if the alleged perpetrators had a history of such acts.