Richard **GUZMAN** and Mary Ann Guzman, Appellants,

v.

The **WESTERN STATE BANK OF DEVILS LAKE**, a North Dakota Corp., et al., Appellees.

No. 75–1970.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1976.

Decided Aug. 27, 1976.

---

David Bossart, Fargo, N. D., for appellant; and Michael O. McGuire, Fargo, N. D., on brief.

Evan F. Heustis, Devils Lake, N. D., for appellee.

Before GIBSON, Chief Judge, and LAY and WEBSTER, Circuit Judges.

LAY, Circuit Judge.

Richard and Mary Ann Guzman bring this appeal from the district court entry of a judgment notwithstanding the verdict in a civil rights action brought under 42 U.S.C. § 1983. The Guzmans sought compensatory and punitive damages arising from an *ex parte* attachment and seizure of their mobile home and automobile by the defendants, The Western State Bank of Devils Lake, North Dakota [hereinafter the Bank], Lyle Fering, individually and as president of the Bank, James Kuchar, individually

and as vice president of the Bank, and William Johnson, d/b/a Bill's Mobile Homes, Devils Lake, North Dakota [hereinafter Johnson].[1] On an earlier appeal this court found the North Dakota pre-judgment summary attachment procedure unconstitutional and reversed the district court's grant of a summary judgment for the defendants. *Guzman v. Western State Bank,* 516 F.2d 125 (8th Cir. 1975), *rev'g* 381 F.Supp. 1262 (N.D.1974). On remand, following a seven-day trial, the jury returned a verdict for the plaintiff in the amount of $9,365.23 for compensatory damages and $5,000 punitive damages against Johnson and $25,000 punitive damages against the Bank, its president and vice president. Thereafter the district court granted a judgment notwithstanding the verdict and entered judgment in favor of the defendants. We reverse.

*Facts.*

The facts essential to our disposition may be summarized as follows:

In September of 1970 the Guzmans purchased a mobile home from Johnson, executing a retail installment contract and security agreement for $8,900.25 (plus a $3,773 finance charge) under which they were obligated to make monthly payments of $150.75. Johnson sold the contract to the Bank with recourse, and the Bank subsequently advanced additional funds to the Guzmans adding their automobile to the security agreement and increasing their monthly payments by $51.83.

Shortly after occupying the mobile home the Guzmans relayed numerous complaints to both Johnson and the Bank regarding defects in the unit's windows and doors which permitted cold air to penetrate the mobile home and caused the Guzmans to purchase more than $350 worth of propane fuel to heat the home during 1970–71.

In January of 1971, when the Guzmans fell behind in their installment payments,

they informed the Bank that the cost of the inordinate amount of propane fuel necessary to heat the home made it difficult for them to make their payments. Defendant Kuchar offered to use whatever influence the Bank had in contacting the mobile home manufacturer and Johnson in an effort to have the defects corrected. Both Johnson and the manufacturer attempted to correct the problems during the summer of 1971, but were not completely successful.

The Guzmans continued to make late or partial payments and in some months made no payment at all. Between October 14, 1970 and March 5, 1973, the Guzmans paid the Bank approximately $4,075.

On May 2, 1972 the Bank notified the Guzmans that their mobile home and automobile would be repossessed if payment to cover past due amounts was not received immediately. However no further action was taken until November of 1972 when the Bank sent a registered letter to the Guzmans. Although they refused to accept that letter, the Guzmans did make a payment on November 28. Three months later, on March 5, 1973, without any further attempt to contact the Guzmans or give notice, the Bank filed an action in a North Dakota state court seeking a money judgment for the balance due on the mobile home contract and the automobile note. Acting pursuant to the North Dakota prejudgment attachment statutes, Kuchar, as vice president of the Bank, filed an affidavit seeking attachment and seizure of the secured property, and a bond. Kuchar delivered the warrant of attachment issued by the clerk of the court to the sheriff and together they proceeded to the Guzman residence. Although neither Mr. Guzman, a county social worker, nor Mrs. Guzman, a community health representative, was at home when the sheriff and Kuchar arrived, the sheriff telephoned Mrs. Guzman at work and she came promptly. Kuchar refused her request for more time to make

---

1. LeRoy Ouellette, individually and as sheriff of Rolette County, North Dakota, was also joined as a defendant. The district court dismissed the suit against him on the ground of quasi-judicial immunity and no appeal has been taken from this dismissal. See our discussion in the prior appeal, *Guzman v. Western State Bank,* 516 F.2d 125, 132 (8th Cir. 1975).

the delinquent payments and returned to Devils Lake. The sheriff then seized the Guzmans' automobile and directed Johnson, who was present at Kuchar's request, to prepare the mobile home for moving. After removing the stripping which surrounded the mobile home unit, Johnson attempted to move the unit with his truck but failed because the wheels of the mobile home were embedded in ice. Arrangements were made to secure a tractor to assist in removing the mobile home. The entire process took approximately four and one-half hours.

Mr. Guzman, on duty during all of this time, was unaware of what was taking place until he arrived at the site of his former home late in the afternoon. At that time the sheriff served the warrant of attachment on Mr. Guzman.

*Bad Faith.*

■ Relying on *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the defendants argue that they cannot be liable under § 1983 because they were acting in accord with provisions of North Dakota statutes which they believed were constitutional.[2] They urge that a defendant cannot be liable for money damages under the Civil Rights Act where he acted under a presumptively valid state law. *See, e. g., Tucker v. Maher,* 497 F.2d 1309 (2d Cir. 1974); *Rios v. Cessna Finance Corp.,* 488 F.2d 25 (10th Cir. 1973). The argument is parallel to the principle, stated by the Supreme Court, that an official has no duty to anticipate unforeseeable constitutional developments. *See O'Connor v. Donaldson,*

422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Although we of course adhere to that principle we nonetheless recognize that there may be circumstances, such as exist here, where bad faith may be found under § 1983 even though a defendant acts pursuant to a presumptively valid statute. A person may feel he is pursuing his legal rights but, where his acts are oppressive and *in reckless disregard of another person's constitutional rights,* he can still be liable under § 1983 for his misconduct.

In *Strickland,* a § 1983 action relating to the discipline of students, the Supreme Court, discussing "bad faith" of school board members, applied both a subjective and an objective test. The Court observed:

> [A] school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. . . . A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith. 420 U.S. at 322, 95 S.Ct. at 1001.

*See also O'Connor,* 422 U.S. at 576–77, 95 S.Ct. 2486;[3] *Scheuer v. Rhodes,* 416 U.S.

---

2. In *Pierson* the Supreme Court reaffirmed the prevailing view that police officers "should not be liable if they acted in good faith and with probable cause in making an arrest under a statute that they believed to be valid." 386 U.S. at 555, 87 S.Ct. at 1218.

3. In *O'Connor,* plaintiff was awarded compensatory damages because he had been illegally committed in an institution for the mentally insane when he was dangerous neither to himself nor to others. The defendants, doctors in the institution, asserted that they were acting pursuant to a Florida law which they believed to be constitutional. The trial court refused to

give the defendants' requested jury instruction on the defense of good faith reliance on the statute. On remand the Supreme Court, quoting from *Strickland,* 420 U.S. at 322, 95 S.Ct. 992, said the issue should be whether

> O'Connor "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [Donaldson], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to [Donaldson]."

*O'Connor,* 422 U.S. at 577, 95 S.Ct. at 2494.

232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

In applying the *Strickland* test recent decisions by courts of appeal have emphasized the reasonableness of a defendant's conduct. The Fifth Circuit stated that the defendant "not only must have acted in good faith, but also must have acted reasonably." *Stephenson v. Gaskins,* 531 F.2d 765, 766 (5th Cir. 1976). The Second Circuit says it a little differently: "Not only must the defendants have acted believing that [their acts] were lawful but also this belief must have been a reasonable one in light of the circumstances." *Laverne v. Corning,* 522 F.2d 1144, 1150 (2d Cir. 1975). In discussing the recent Supreme Court cases involving good faith immunity the Sixth Circuit concluded that "the factors to be considered in determining whether the defense has been established are whether [the defendant] knew or should have known [the extent of the plaintiff's constitutional rights] and if they knew (or should have known), whether they acted out of an honest and reasonable belief that their interference with . . . those rights was required to avoid imminent and serious injury to persons or property." *Glasson v. Louisville,* 518 F.2d 899, 908 (6th Cir. 1975). *Cf.* n. 3 *supra* (discussion of *O'Connor*).

We conclude that where a plaintiff asserts denial of constitutional rights under § 1983, a defendant's claim of good faith immunity due to reliance on a presumptively valid statute must be considered in light of not only the *sincerity* in his belief that what he was doing was right, but the *reasonableness* of his actions in the circumstances. Where it is patently obvious that his conduct will oppressively harm another person and he acts with reckless disregard

of a person's constitutional rights, a submissible case is made. *See O'Connor, supra.*

*The Judgment Notwithstanding the Verdict.*

■ The district court, in granting a judgment notwithstanding the verdict, found that, although the property was seized under invalid proceedings, there was no evidence that the defendants acted in bad faith or with the intent to injure the plaintiffs. In determining whether there exists evidence upon which a jury could find that the defendants were guilty of bad faith we think it was necessary for the trial court to consider the principles upon which this court earlier found the North Dakota statute unconstitutional. We recognized that the cases of *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and more recently, *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), required a constitutional balancing test "by which the conflicting interest of the state in providing protection for the creditor's proprietary rights by summary seizure and of the debtor in avoiding a wrongful seizure of property in his possession are to be weighed in determining if due process has been afforded." 516 F.2d at 128. Two factors contributing to the North Dakota statutes' unconstitutionality, (1) the lack of a requirement that a summary procedure be instituted *only* to avoid removal, destruction, or concealment of property or of the creditor's proprietary interest therein, and the lack or need for summary procedure in this case, and (2) failure to recognize the obvious detrimental impact upon the family involved, were clearly relevant to the issue of bad faith. Although the defendants who initiated the

---

The Fifth Circuit, upon remand, vacated the judgment and returned the case to the trial court, saying:

> In the light of *Wood v. Strickland,* we hold that the district court erred in denying an instruction concerning O'Connor's claimed reliance on state law as authorization for Donaldson's continued confinement. We now hold . . . that the district court's instructions were insufficient in defining the scope of the qualified immunity possessed by

state officials under 42 U.S.C. § 1983. Moreover, since the case was tried before the Supreme Court decided *Wood v. Strickland,* the interests of justice require that the plaintiff and both defendants . . . have an opportunity to present evidence and to articulate their arguments on the issue of official immunity.

*Donaldson v. O'Connor,* 519 F.2d 59, 60 (5th Cir. 1975).

attachment procedures cannot be held liable for failing to appreciate these factors as deficiencies of constitutional law, they must nonetheless stand accountable for the oppressiveness of their conduct under the given circumstances. Notwithstanding the defendants' good faith belief that the state law allowed them to exercise their proprietary right by seeking summary attachment, the jury had a right to find the defendants acted in reckless disregard of the plaintiffs' security and welfare in derogation of their basic constitutional rights, absent notice and a fair hearing, to be secure in their home.[4] It is not necessary that one be a constitutional lawyer to fully appreciate the consequences of his acts. As Judge Matthes observed in the earlier appeal:

> In this case we have debtors faced with the catastrophe of losing their home in an *ex parte* procedure by which they are summarily evicted without any opportunity to be heard and to resist the grounds for eviction. Truly, these debtors were driven to the wall by the seizure of the mobile home.

516 F.2d at 132 (footnote omitted).

On the record as a whole we find the district court erred in not weighing the relevant factors contributing to the defendants' bad faith, which we find the jury had a right to consider, in determining whether the defendants knew or should have known their conduct would deny the plaintiffs' basic constitutional rights and cause them injury.

*Damages.*

We turn now to a discussion of the damages involved. Compensatory damages awardable in a § 1983 case are not limited to the out-of-the-pocket pecuniary loss the plaintiffs suffered. They can be awarded for emotional and mental distress even though no actual damages are proven. *Donovan v. Reinbold,* 433 F.2d 738, 743 (9th Cir. 1970). *See also Paton v. La Prade,* 524 F.2d 862, 872 (3d Cir. 1975); *Seaton v. Sky Realty Co., Inc.,* 491 F.2d 634, 637 (7th Cir.

1974); *Steele v. Title Realty Co.,* 478 F.2d 380, 384 (10th Cir. 1973). Punitive damages may also be awarded in civil rights actions where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff. *See, e. g., Paton v. La Prade, supra,* at 872; *Jeanty v. McKey & Poague, Inc.,* 496 F.2d 1119, 1121 (7th Cir. 1974); *Gill v. Manuel,* 488 F.2d 799, 801 (9th Cir. 1973); *Caperci v. Huntoon,* 397 F.2d 799, 801 (1st Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968). In an extensive separate opinion in *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), Justice Brennan makes the following comments as to the award of punitive damages under § 1983:

> To recover punitive damages, I believe a plaintiff must show more than a bare violation of § 1983. On the other hand, he need not show that the defendant specifically intended to deprive him of a recognized federal right, as is required by the word "willfully" in 18 U.S.C. § 242. Nor need he show actual damages. It is sufficient for the plaintiff to show either that the defendant acted "under color of [a] statute, ordinance, regulation, custom or usage of any State or Territory," and with actual knowledge that he was violating a right "secured by the Constitution and laws" *or* that the defendant acted with reckless disregard of whether he was thus violating such a right.

*Id.* at 233, 90 S.Ct. at 1642. (Brennan, J., concurring in part and dissenting in part) (citations omitted).

In the present case the plaintiffs point to the following facts as indications that punitive damages should be allowed:

1. The Bank voluntarily created a duty to aid the Guzmans; they relied on the help which the Bank committed itself to provide; and the Bank failed to fulfill that duty;

2. The Bank and Johnson, after agreeing to help the Guzmans and gaining their trust and confidence, conspired

---

**4.** In contrast to *O'Connor,* the trial court properly instructed the jury as to the defendants' right to rely upon North Dakota law, as it existed at the time.

to seize the mobile home without consulting the Guzmans or giving them any notice;

3. The defendants seized the Guzmans' mobile home in the dead of a North Dakota winter;

4. The defendants seized the Guzmans' automobile, which they needed for their jobs, in addition to their home;

5. The verified summons and complaint, signed by the vice president of the Bank, upon which the warrant of attachment was based, were false; and

6. The Bank refused to give the Guzmans additional time to pay the overdue balance once the warrant of attachment was obtained.

While any one of the above factors standing alone might not provide sufficient grounds for a punitive award, we think that the combination of these factors, as supported by substantial evidence in the case, provides sufficient grounds to support a jury award of punitive damages.

■ In reviewing an award of punitive damage there is no basis from which an appellate court may measure damage. The amount of the punitive award lies in the discretion of the jury and may only be disturbed when it appears, in the judgment of the reviewing court, to be unfair and shocking. *See, e. g., Snodgrass v. Nelson,* 503 F.2d 94 (8th Cir. 1974); *Zatina v. Greyhound Lines, Inc.,* 442 F.2d 238 (8th Cir. 1971); *Perry v. Bertsch,* 441 F.2d 939 (8th Cir. 1971). In the present case we believe that the award for punitive damages against the Bank is excessive and should be reduced to $10,000. We reverse the judgment of the district court and direct the district court to enter judgment on the verdict rendered, except that the amount of punitive damages awarded against the Bank, its president and vice president, is reduced to $10,000.

The judgment is reversed and vacated and the case if remanded to the district court with directions to enter judgment in accord with this opinion.