563 So.2d 1387 (1990)
A.V. UNDERWOOD and Augustine Underwood
v.
FOREMOST FINANCIAL SERVICES CORPORATION.
No. 89-CA-0053.
Supreme Court of Mississippi.
June 20, 1990.
*1388 W.T. Bailey, Sr., Lucedale, for appellant.
Wayne L. Hengen, Hengen & Hengen, Biloxi, for appellee.
Before HAWKINS, P.J., and PRATHER and BLASS, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
In this case, purchasers (debtors) of a mobile home and furnishings under security agreement and retail installment contract became delinquent in making monthly payments; the delinquency led seller (creditor) to seize the debtors' home and its contents. The debtors sued the creditor for compensatory and punitive damages arising from an allegedly unconstitutional ex parte seizure of their home and its contents; they contended that the seizure of their property, prior to notification and a hearing, was violative of all due process rights accorded under the Fourteenth Amendment.
A hearing was held and briefs were submitted  subsequent to which the circuit judge entered judgment against the debtors. The judge reasoned that the creditor was not liable for damages since it acted in accord with a presumptively-valid, albeit unconstitutional, state statute. The debtors appealed.
On appeal, this Court was asked to decide whether the circuit judge's reasoning was proper. Perusal of well-entrenched federal and state constitutional law leads to the conclusion that a reversal is necessitated.

A. Detailed Background
Unless otherwise noted, the following facts are undisputed.

1.
On July 19, 1986, A.V. and Augustine Underwood of Lucedale, Mississippi, purchased a mobile home and furnishings from Crabtree Trailer Sales of Mobile, Alabama. The home and furnishings were financed by Foremost Financial Services Corporation (hereinafter Foremost or creditor), a Michigan corporation, upon execution of a security agreement and retail installment contract  pursuant to which the Underwoods were obligated to make 120 monthly installments of about $150.00.[1] After making a down payment of $470.00 and four monthly installments, the Underwoods met hard times and, presumably in February 1987, their account with Foremost became delinquent. Several months later, Foremost: (1) filed a complaint in replevin, (2) posted bond, (3) seized the Underwoods' mobile home and its contents, and (4) transported the home to the place of purchase (i.e., Alabama).
Of critical import, the home was seized prior to serving the Underwoods with notice and prior to providing them with an opportunity to be heard. The evidence indicates that the Underwoods first learned of the seizure upon their return from work to the vacant lot on which their home was sited.

2.
On June 15, 1987, the Underwoods filed a "Response to Replevin" and claimed that their home was seized in an improper manner. They explained that, after their account became delinquent, they hired an attorney to help them work out an amicable settlement with Foremost; however, their attorney's attempts were ignored by Foremost and their home was surprisingly seized while they were away at work. The Underwoods later amended their response  contending that Foremost's "surprise" seizure of their home and contents was grievously-violative of their constitutional rights to due process (i.e., right to *1389 adequate notification and a pre-seizure hearing). The Underwoods requested attorneys fees, compensatory and punitive damages for the unconstitutional seizure. See 42 U.S.C. § 1983 ("Every person who, under color of any statute ... of any State or Territory, subjects, or causes to be subjected, any citizen ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured ... for redress.").

3.
On November 6, 1987, a replevin hearing was held in the George County Circuit Court. Two specific issues were before the circuit court: (1) whether Foremost should be permitted to permanently retain possession of the Underwoods' home and its contents; and (2) whether Foremost seized the home in an unconstitutional manner and, as a consequence, should be held liable for damages.
Upon conclusion of the hearing, the judge found that, in view of the delinquent status of the Underwoods' account, he had no "alternative but to award [permanent] possession of the ... home to [Foremost]." The judge then ordered the parties to submit briefs on the issue concerning constitutionality of the seizure. Upon reviewing the briefs, the judge found that the Underwoods were indeed deprived of their property in an unconstitutional manner, but declined to hold Foremost liable for damages since the creditor acted under color of a presumptively-valid (albeit unconstitutional) state statute governing replevins. The Underwoods appealed.

B. The Issue
Whether the Underwoods defaulted on their sales agreement, thereby entitling Foremost to seize the mobile home in a constitutionally-permissible manner  is an issue which seems to be undisputed and is not before this Court. The issues before this Court are: (1) whether the seizure transpired in a constitutionally-impermissible manner and, if so (2) whether the circuit judge properly refused to impose liability for the unconstitutional seizure.

II. ANALYSIS

A. An Unconstitutional Seizure?
No one disputes that Foremost seized the Underwoods' home in compliance with Mississippi's so-called "replevin statute." See MISS. CODE ANN. § 11-37-101 (1989 Supp.).[2]
The dispute concerns the statute's (i.e., the seizure's) constitutionality. See U.S. CONST. amend. XIV, § 1 (which provides in pertinent part: "No State shall make or enforce any law which shall ... deprive any person of ... property, without due process of law"); see also MISS. CONST. art. 3, § 14 ("No person shall be deprived of ... property except by due process of law"). Foremost contended that the statute is constitutional; the Underwoods and ultimately, the circuit judge, disagreed. The issue was recently rendered moot.
On April 13, 1989, a federal district court rightly found § 11-37-101 to be unconstitutional. See Wyatt v. Cole, 710 F. Supp. 180 (S.D.Miss. 1989). The Mississippi Legislature responded promptly and redrafted the statute; it now meets minimum due process requirements. See Miss. SB 2187 (1990) ((amending § 11-37-101) (approved by the Governor and to become effective on July 1, 1990)). Thus, a sole issue remains for this Court's resolution.

B. Should Foremost be Subjected to Liability?

1.
As noted in Section I(A)(3) of this opinion, the circuit judge found that:

*1390 Because the [Underwoods'] claim for damages is without merit as to the ultimate taking of their property, due to [Foremost's] proven entitlement to same, the sole remaining issue ... is whether [Foremost's unconstitutional] taking of the property... resulted in damage to the [Underwoods] for which [Foremost] is responsible. It is apparent that... [Foremost] properly proceeded to take immediate possession of the [Underwoods'] property according to the provisions of Miss. Code Ann. § 11-37-101 (Supp. 1987), a law [Foremost] was entitled to assume was constitutional.
Vol. I, at 141-42 (from the circuit judge's "Memorandum Opinion and Order"). In short, Foremost was not subjected to liability for damages simply because it acted pursuant to a presumptively-valid (albeit unconstitutional) statute.

2.
The circuit judge's decision concerning liability disregards applicable and established constitutional law.
For example, in Guzman v. Western State Bank of Devils Lake, 540 F.2d 948 (8th Cir.1976), the debtors (purchasers of a mobile home under security agreement and retail installment contract) sued the creditor for compensatory and punitive damages arising from an unconstitutional ex parte seizure of their home. The home had been seized: (1) after the debtors' account became delinquent, and (2) after the creditor complied with a presumptively-valid state statute which provided for seizure prior to notification and a hearing. (Notably, the statute involved in the Guzman case was nearly identical to the one involved in the case sub judice.) A jury ultimately found for the debtors, and awarded $9,365.23 in compensatory damages and $30,000 in punitive damages. The federal district judge, however, granted the creditor's j.n.o.v. motion after concluding that the creditor seized the debtors' mobile home in good-faith reliance on a presumptively-valid (albeit unconstitutional) state statute. The debtors appealed.
On appeal, the creditor maintained: (1) that the jury improperly awarded damages; (2) that it should not be held liable for damages simply because it was "acting in accord with [statutory] provisions which [it] believed were constitutional"; and (3) therefore, the district court properly granted its j.n.o.v. motion. Id. at 951. The Eighth Circuit Court of Appeals disagreed: "A [creditor] may feel [it] is pursuing [its] legal rights but, where [its] acts are oppressive and in reckless disregard of another['s] constitutional rights, [it] can still be [held] liable." Id. (citing 42 U.S.C. § 1983) (emphasis in original). The Eighth Circuit noted that the applicable test is:
[W]here a plaintiff asserts denial of constitutional rights ..., a defendant's claim of good faith reliance on a presumptively valid statute must be considered in light of not only the sincerity in his belief that what he was doing was right, but the reasonableness of his actions in the circumstances.
Id. at 952 (emphasis in original) (citing Stephenson v. Gaskins, 531 F.2d 765 (5th Cir.1976);[3]Laverne v. Corning, 522 F.2d 1144 (2d Cir.1975)); see also McElveen v. County of Prince William, 725 F.2d 954, 957 (4th Cir.1984) ("measure of good faith [involves] both objective and subjective elements"). The Court added that "[w]here it is patently obvious that [the creditor's] conduct will oppressively harm [the debtor] and [it] acts with reckless disregard of the [debtor's] constitutional rights, a submissible case is made." Id. The Court reinstated the jury verdict  rationalizing that reasonable-minded jurors could have found that the creditor "knew or should have known [its] conduct would deny the [debtors'] *1391 basic constitutional rights and cause them injury."[4]
The principles enunciated in Guzman remain valid. See, e.g., Rheuport v. Ferguson, 819 F.2d 1459, 1465 (8th Cir.1987) ("[M]any cases have imposed liability on individuals who followed unconstitutional state procedures."); Messick v. Leavins, 811 F.2d 1439, 1443 (11th Cir.1987) ("Th[e] failure to provide any predeprivation process is actionable" under § 1983.); see Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981) (Two elements of a § 1983 action include: (1) The defendant must have been "acting under color of state law"; and (2) The defendant's conduct must have "deprived a person of rights ... secured by the Constitution."), and its progeny; see also Mann v. City of Tucson, Dep't of Police, 782 F.2d 790 (9th Cir.1986); Cobb v. Georgia Power Co., 757 F.2d 1248 (11th Cir.1985); Wolf-Lillie v. Sonquist, 699 F.2d 864 (7th Cir.1983).

3.
In the case sub judice, the circuit judge did not comply with applicable law in deciding whether Foremost should be subjected to liability for injurious violation of the Underwoods' constitutional right to due process. An evidentiary hearing should have been held, and Foremost's claim of good-faith reliance on a presumptively-valid statute should have been considered in light of not only the sincerity in its belief that it was acting properly, but the reasonableness of its actions under the circumstances.
Based on the skeletal facts reflected in the record, and in light of entrenched federal and state constitutional law of which creditors should be well aware, a fact-finder conceivably could conclude that Foremost's "surprise" seizure of the Underwoods' home and its contents was, under the circumstances, unreasonable and compensable. See, e.g., Donovan v. Mayor & Council of Vicksburg, 29 Miss. 247 (1855) (probably the seminal Mississippi case construing state constitution as prohibiting laws which permit deprivation of property without notice or hearing); see also Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and their progeny; Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).[5]
Notably, the record evinces no explanation for the necessity of an immediate seizure. In cases where pre-seizure process is feasible, compliance with Miss. Code Ann. § 11-37-131 (Supp. 1989) is required. See Al-Mustafa Irshad v. Spann, 543 F. Supp. 922, 926 (E.D.Va. 1982) (In determining whether an individual or entity should be held liable for acting under color of an unconstitutional law, one factor courts must consider is whether it was "impracticable [or] impossible to provide a meaningful hearing before deprivation.") (quoting Parratt, supra); Messick, 811 F.2d at 1442 (courts must decide "necessity of quick action" or "infeasibility of predeprivation process") (citing Parratt, supra, and Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)); Rittenhouse v. Dekalb County, 764 F.2d 1451, 1455 (11th Cir.1985) ("[W]here a deprivation occurs pursuant to *1392 an established state procedure, pre-deprivation process is ordinarily feasible.").

III. CONCLUSION
For the foregoing reasons, the circuit judge's decision that the seizure transpired in an constitutionally-impermissible manner is affirmed. The decision that Foremost cannot be subjected to liability for an injurious seizure is reversed and remanded for proceedings not inconsistent with this opinion and applicable law.
On remand, the fact-finder should decide whether Foremost's unconstitutional seizure of the Underwoods' property was an act for which the creditor should be subjected to liability and, if so, to what extent.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
HAWKINS and DAN M. LEE, P.JJ., specially concur.
PITTMAN, J., not participating.
HAWKINS, Presiding Justice, Specially Concurring:
I concur in reversal for the reason that the seizure was not of an abandoned or empty trailer, but a trailer being used as the residence of the Underwoods and in all likelihood property was seized in which Foremost had no right, title or interest. In my view, a court should be very careful in assessing damages against any person who has scrupulously complied with a statute.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] The Underwoods were indebted to Foremost for the cost of the home and furnishings in the amount of $9,297.31 (plus a finance charge of $9,045.89).
[2] This statute provides, in part, that an action in replevin will commence upon the plaintiff's filing of "a declaration under oath setting forth": (1) a description of the personal property; (b) the value of the property; (c) all facts and circumstances upon which entitlement to "immediate [re]possession" is predicated; and (4) an explanation that the defendant "is in possession" wrongfully.
[3] Stephenson v. Gaskins, 531 F.2d 765 (5th Cir.1976), was subsequently modified (on other grounds) by Stephenson v. Gaskins, 539 F.2d 1066 (5th Cir.1976).
[4] Guzman, 540 F.2d at 953. The Court noted that, in addition to compensatory damages, damages may be awarded for "emotional and mental distress even though no actual damages are proved." Id. (citing numerous authorities). Moreover, "[p]unitive damages may also be awarded in ... actions where the [creditor] exhibits oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for the [constitutional] rights of the plaintiff." Id. (citing numerous authorities).

Notably, the Eighth Circuit in Guzman held that the punitive-damages award of $30,000 was excessive and, consequently, reduced it by half the amount. Id. at 954.
[5] Inquiry into the reasonableness of Foremost's constructive conversion of the Underwoods' personal belongings (e.g., clothing and other necessities)  assuming that their belongings were among the "contents" of the seized home  seems appropriate.