# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-IA-01480-SCT

*FRED L. LEMON, OWNER; ROGER HYATT d/b/a*

*OCEAN SPRINGS PAWN AND JEWELRY, LESSEE;*

*PAT TARMATO d/b/a TARMATO'S CRAWFISH, LESSEE*
*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*


## CONSOLIDATED WITH

## NO. 97-IA-01481-SCT

*FRED L. LEMON*
*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/1997 |
| TRIAL JUDGE: | HON. T. LARRY WILSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN G. CORLEW |
| | LEAH D. McDOWELL |
| | SCOTT CORLEW |
| ATTORNEYS FOR APPELLEE: | JACK H. PITTMAN |
| | CHRISTOPHER M. HOWDESHELL |
| | EARL L. KOSKELA |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | REVERSED AND REMANDED - 3/25/1999 |
| MOTION FOR REHEARING FILED: | 4/7/99 |
| MANDATE ISSUED: | 6/24/99 |


**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Appellant Fred Lemon owned two lots along U.S. Highway 90 in Ocean Springs, Jackson County, Mississippi. The property is currently home to two business lessees, Ocean Springs Pawn & Jewelry and Bayou Sporting Goods. Appellee Mississippi Transportation Commission ("MTC") seized those two pieces of property in connection with a highway project to widen a portion of Highway 90 in Ocean Springs.

### The Proceedings Below

¶2. On August 15, 1997, MTC filed two Complaints and Declarations of Taking against Lemon under Miss. Code Ann. §§ 65-1-301 through -347 (Supp. 1998), in the County Court of Jackson County. Pursuant to the new statute, Lemon was served with process on August 22, and the Honorable T. Larry Wilson, County Court of Jackson County, Mississippi (hereinafter "trial court") signed orders granting MTC immediate right and title to the property on August 28, 1997.

¶3. On September 19, 1997, Lemon filed two Motions to Set Aside Orders of August 28, 1997, and to Dismiss. On October 3, 1997, MTC filed two Motions for Order Declaring Public Use and to Amend Order Granting Immediate Right and Title to Property.

¶4. On November 20, 1997, the trial court issued orders denying Lemon's motions but certified the question of the statute's constitutionality for interlocutory appeal. On January 5, 1998, the trial court granted MTC's Motions for Order Declaring Public Use and to Amend Order Granting Immediate Right and Possession. On February 2, 1998, this Court granted interlocutory appeal of the November 20, 1997, orders and has now consolidated the two cases for appeal.

¶5. On interlocutory appeal, Lemon raises the following issues for review by this Court:

**I. WHETHER THE NEW TAKING SCHEME CODIFIED AT MISS. CODE ANN. §§ 65-1-301 TO -347 VIOLATES THE DUE PROCESS RIGHTS OF PROPERTY OWNERS LIKE LEMON.**

**II. WHETHER THE NEW TAKING SCHEME CODIFIED AT MISS. CODE ANN. §§ 65-1-301 TO -347 VIOLATES ARTICLE 3, SECTION 17 OF THE MISSISSIPPI CONSTITUTION.**

**III. WHETHER THE NEW TAKING SCHEME CODIFIED AT MISS. CODE ANN. §§ 65-1-301 TO -347 VIOLATES THE SEPARATION OF POWERS OF MISSISSIPPI GOVERNMENT.**

## STANDARD OF REVIEW

¶6. When passing on questions of law, the standard of review is *de novo*. *Mauney v. State ex rel. Moore*, 707 So.2d 1093, 1095 (Miss. 1998). Acts of the Mississippi Legislature are presumed to be constitutional, and the unconstitutionality of an Act must be proved beyond a reasonable doubt before it will be declared invalid. *Chamberlin v. City of Hernando*, 716 So.2d 596, 601 (Miss. 1998). Finally, a due process violation under the state constitution requires the infringement of a liberty or property right.

*Robinson v. Stewart*, 655 So.2d 866, 869 (Miss. 1995).

## LEGAL ANALYSIS

¶7. The statute, Miss. Code Ann. §§ 65-1-301 to -347 (Supp. 1998), became law in July of 1997. Before examining Lemon's specific issues on interlocutory appeal, it is first necessary to discuss briefly the general procedure of condemnation and taking as outlined by this statute.

¶8. First, MTC "finds it necessary to condemn property." Miss. Code Ann. § 65-1-303(1). Next, MTC files a complaint and declaration of taking in the circuit or county court of the county where the property is located identifying the owner(s), the property, the reason for the taking, and the fair market value as determined by the transportation commission as just compensation for the taking. Miss. Code Ann. § 65-1-303(1)-(3). Further, the complaint and the declaration are to be accompanied by a deposit of a sum in the amount of the fair market value of the property. Upon the filing of the complaint, declaration and deposit, summons is then issued and served on the landowner. *Id*. § 65-1-303(4).

¶9. Whereupon, "title to the land or such other interest therein specified in the complaint and the declaration of taking, together with the **right to immediate possession** thereof, shall vest in the Mississippi Transportation Commission, and **the judge shall enter such orders in the cause as may be required** to place the transportation commission in possession and title." *Id*. § 65-1-305(1) (emphasis added). The landowner is provided an opportunity to file an answer to the Complaint "praying **only** for a determination of just compensation. *Id*. § 65-1-309 (emphasis added). Section 65-1-309 also contemplates that the answer contain "[s]uch affirmative defenses or matters as are pertinent to the action." *Id*. At this point, by statute title has already vested in the MTC. *See Id*. §§ 65-1-305(1) & -309(1).

¶10. Section 65-1-313 provides:

> After the filing of the plat, the judge, upon motion and ten (10) days' notice by either the transportation department or the owner shall, either in or out of term, hear and determine all issues raised by the pleading other than the issue of just compensation, including, if controverted, questions of necessary and proper parties, title to the land, interest taken and area taken.

This hearing would clearly be after title to the property has passed to the MTC.

¶11. Finally, the final provision of the statute purports to preserve due process rights, as follows:

> Nothing in this article shall be construed so as to deprive the owner of the property or interest in the property which is the subject of acquisition pursuant to this article of due process of law as guaranteed by the Constitutions of the State of Mississippi and of the United States.

Miss. Code Ann. § 65-1-347. With this statutory foundation laid, Lemon's specific issues can now be examined.

## I. WHETHER THE NEW TAKING SCHEME CODIFIED AT MISS. CODE ANN. §§ 65-1-301 TO -347 VIOLATES THE DUE PROCESS RIGHTS OF PROPERTY OWNERS LIKE LEMON.

¶12. Lemon first argues that the new statute is unconstitutional because it denies the landowner the right to

be heard on the question of public use. Lemon argues that this Court has held that notice to a property owner is prerequisite to any valid taking to comply with due process.

¶13. Lemon refers this Court to *Underwood v. Foremost Financial Servs. Corp.* where it was held that a seizure of property without notification and hearing under Mississippi's now amended replevin statute violated due process. *Underwood v. Foremost Financial Servs. Corp.*, 563 So.2d 1387, 1389 (Miss. 1990). There, this Court agreed with a federal district court's holding that the replevin statute was violative of due process which said, as follows:

> The Mississippi replevin under bond statute provides no discretion to the judge to deny a writ of replevin on presentation of a complaint in the statutory form. By the terms of the statute, the judge "shall" grant whatever is presented. The required protections of judicial determination of the validity of the complaint, which are present in Mississippi's Claim and Delivery statutes, are absent.

*Wyatt v. Cole* , 710 F.Supp. 180, 182 (S.D.Miss. 1989). Lemon asserts that likewise in the instant case the taking statute under which MTC proceeds denies the court the discretion to determine public use, because the mere filing of a complaint in statutory form and service of process is declared by the statute to deprive a landowner of title to his property.

¶14. MTC argues correctly that the statute clearly provides notice before it may obtain an Order vesting title in itself, because proof of service of process must be first provided to the court by MTC. *See* Miss. Code Ann. § 65-1-301 (Supp. 1998). Lemon's argument is appropriately focused on the opportunity to be heard and judicial determination.

¶15. MTC's response to Lemon's assertions is that procedural due process does not always require a pre-acquisition hearing before private property is acquired by a governmental entity, and is not required by statute in this instance. MTC also refers this Court to *Underwood* but for a different proposition. There, MTC argues that this Court "hinted" that a post-deprivation hearing might not be unconstitutional if an immediate need for such could be shown.[1] *Underwood*, 563 So.2d at 1391.

¶16. In *Underwood*, this Court said, "Notably, the record evinces no explanation for the necessity of an *immediate* seizure." *Id*. (emphasis in original). There, this Court cited *Parratt v. Taylor*, in which the United States Supreme Court said, as follows:

> We have, however, recognized that postdeprivation remedies made available by the State can satisfy the Due Process Clause. In such cases, the normal predeprivation notice and opportunity to be heard is pretermitted if the State provides a postdeprivation remedy. In ***North American Cold Storage Co. v. Chicago***, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908), we upheld the right of a State to seize and destroy unwholesome food without a preseizure hearing. The possibility of erroneous destruction of property was outweighed by the fact that the public health emergency justified immediate action and the owner of the property could recover his damages in an action at law after the incident. In ***Ewing v. Mytinger & Casselberry, Inc.***, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), we upheld under the Fifth Amendment Due Process Clause the summary seizure and destruction of drugs without a preseizure hearing. Similarly, in ***Fahey v. Mallonee***, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), we recognized that the protection of the public interest against economic harm can justify the immediate seizure of property without a prior hearing when substantial questions are raised about the competence of a bank's management. In ***Bowles v. Willingham***, 321

U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944), we upheld in the face of a due process challenge the authority of the Administrator of the Office of Price Administration to issue rent control orders without providing a hearing to landlords before the order or regulation fixing rents became effective. *See also Corn Exchange Bank v. Coler*, 280 U.S. 218, 50 S.Ct. 94, 74 L.Ed. 378 (1930); *McKay v. McInnes*, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929); *Coffin Brothers & Co. v. Bennett*, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); and *Ownbey v. Morgan*, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921). **These cases recognize that either the necessity of <u>quick action</u> by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some <u>meaningful means</u> by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process.**

*Parratt v. Taylor*, 451 U.S. 527, 538-39, 1101 S.Ct. 1908, 1914-15, 68 L.Ed.2d 420, 430-31 (1981) (emphasis added & footnote omitted), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986).

¶17. MTC argues that the postdeprivation remedies afforded the landowner under this statute are "meaningful means" by which to assess the propriety of the State's action after the initial taking and are thus nonviolative of due process. Therefore, where "quick action" is needed and reasonable under the circumstances, the statute is constitutional.

¶18. MTC correspondingly argues that quick action was needed and reasonable in the instant case, because of the necessity of avoiding court delays in highway projects. The highway projects are necessary to alleviate traffic pressure, and bidding on construction contracts and the removal or movement of utilities is impossible until the MTC has title to the property. MTC asserts that service to the general public necessitates that private property be acquired quickly in order to prevent landowners from delaying these highway projects by extensive court proceedings.

¶19. This Court has recognized such a necessity in *Hudspeth v. State Highway Comm'n*, a case discussing taking under an older statute, Miss. Code Ann. § 11-27-81 (1972), as follows:

The "quick take" statute is a major public policy pronouncement appropriately emanating from the legislative branch of our government. It was designed to enhance the State's highway program by providing the highway department access to the needed right-of-way as quickly as practicable consistent with the legitimate interests of the landowner. The idea was to prevent landowners holding up the highway construction project by dragging out the eminent domain proceedings for as long as possible.

*Hudspeth v. State Highway Comm'n*, 534 So.2d 210, 213 (Miss. 1988). MTC submits that since this new statute became effective on July 1, 1997, it has filed in excess of four hundred (400) cases. Only thirty-six (36) have been challenged, including these two. This statute has allowed MTC to complete acquisition of right-of-way much faster than under the procedure followed pursuant to Miss. Code Ann. § 11-27-1 (1972).

¶20. Finally, MTC argues that "meaningful means" exist to assess the propriety of the taking **after** title has vested in MTC. The pertinent part of the statute reads as follows:

> After the filing of the plat, the judge, upon motion and ten (10) days notice by either the transportation department or the owner shall, either in or out of term, **hear and determine all issues raised** by the pleading other than the issue of just compensation, including, if controverted, questions of necessary and proper parties title to land, interest taken and area taken.

Miss. Code Ann. § 65-1-313 (Supp. 1998) (emphasis added). MTC asserts that if a property owner seriously challenges any issue in the condemnation process under this statute, the trial court is authorized to hear and determine that issue, which naturally includes the discretion to dismiss and rescind all prior orders. *See* Miss. Code Ann. § 65-1-327 (Supp. 1998).

¶21. Lemon responds that the notice required under the statute and given by the MTC in this case is inadequate, because upon service of process, MTC is entitled to immediate possession.[2] *See* Miss. Code Ann. § 65-1-303, -305 (Supp. 1998). The summonses in this case advised Lemon, as follows:

> Your response must be mailed or delivered within twelve (12) months from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

*See* Miss. Code Ann. § 65-1-311 (Supp. 1998). Thirteen (13) days later the court entered its Orders Granting Plaintiff Right of Immediate Title and Possession.

¶22. Lemon further responds that MTC's interpretation of key subsections (§§ 65-1-313 and -327) of the statute are unsubstantiated and are lacking as meaningful means to assess the propriety of the taking. Lemon argues that Section 65-1-313 allows the court to hear and determine all issues only after the filing of the plat, which occurs up to six (6) months after the property is seized.[3] Moreover, the only pleading a property owner is permitted to file is an answer "praying only for a determination of just compensation." Miss. Code Ann. § 65-1-309 (Supp. 1998). Thus, Lemon asserts that Section 65-1-309 does not provide the plenary authority as MTC contends.

¶23. Lemon asserts that Section 65-1-327 does not give the court "discretion to dismiss and rescind all prior orders" as MTC claims. Rather, this section merely addresses the formalities of the proceedings, as follows:

> In all cases of procedure under this article, whenever the mode or manner of conducting the action is not expressly provided for in this article or by the Mississippi Rules of Civil Procedure, or whenever the rules of civil procedure are inapplicable, the judge before whom such proceeding may be pending may make all the necessary orders and rules of procedure necessary to carry into effect the object and intent of this article. The practice in such cases shall conform as nearly as practicable to the practice in other civil actions in the courts.

Miss. Code Ann. § 65-1-327 (Supp. 1998).

¶24. Finally, Lemon argues that the post-deprivation remedy described by MTC is no cure, because the statute itself does not require a showing of immediate need or impracticability of a hearing. In fact, the only prerequisite to filing a complaint under the statute is that MTC "finds it necessary to condemn property." Miss. Code Ann. § 65-1-303 (Supp. 1998). Lemon argues that there is no requirement in this statute that the need be immediate, that the "quick take" statute (Miss. Code Ann. §§ 11-27-81 *et seq.* (1972)) be found inadequate, or that the court have any review of MTC's determination before title vests.[4]

¶25. The Fifth Amendment of the United States Constitution, as applied to the States by the Fourteenth Amendment, provides for due process protections. The Amendment in pertinent part reads as follows: "No person shall . . . be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. Amend V & XIV. Mississippi's constitution provides for due process similarly as follows: "No person shall be deprived of life, liberty, or property without due process of law." Miss. Const. Art. 3, § 14. Procedural due process protections are only implicated if state action deprives an individual of a protected property right. *See, e.g.*, *Esco v. Blackmon*, 692 So.2d 74, 78 (Miss. 1997)(*citing* *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989)). MTC admits that state action and deprivation of a protected property right are involved in this case.

¶26. It is then hornbook law that our state and federal constitutions prohibit laws which permit deprivation of property without prior notice or hearing. *See Donovan v. Mayor & Council of Vicksburg*, 29 Miss. 247 (1855) (described in *Underwood,* by now Chief Justice Prather as probably the seminal Mississippi case on this subject). In *Donovan*, a city ordinance permitted the sheriff to seize and sell all hogs found to be running loose. *Id*. at 248. Petitioner's hogs had been seized and were to be sold when he challenged the ordinance. *Id*. This Court declared the ordinance void and said, "It deprives the citizen of his property without notice or trial, and without the opportunity to protect his rights, and of course without 'due course of law.'" *Id*. at 249-50. In the case *sub judice*, the rights of landowners are clearly limited by this statute, but one cannot say that a landowner has been deprived of property "without notice or trial." The statute provides notice to the landowner and contemplates a post-deprivation remedy.

¶27. The ultimate issue is then whether a post-deprivation remedy by statute is enough to satisfy due process. In *Underwood*, as MTC argues above, this Court cited *Parratt* which recognized "that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt*, 451 U.S. at 539, 101 S.Ct. at 1915, 68 L.Ed.2d at 431.

¶28. However, since *Parratt* was handed down in 1981, the issue of procedural due process being satisfied by post-deprivation remedies has been a frequent subject addressed in the federal courts. First, due process does not always require the state to provide a hearing prior to an initial deprivation of property. *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997). Three conditions must be met before a post-deprivation remedy will be deemed to satisfy due process. "The conditions are, first, that the deprivation be unpredictable; second, that predeprivation process be impossible, making any additional safeguard useless; and, third, that the conduct of the state actor be unauthorized." *Charbonnet v. Lee*, 951 F.2d 638, 642 (5th Cir. 1992) (footnote omitted). Clearly, the state statute here outlines a deprivation that is predictable. Second, predeprivation process is not impossible, just inconvenient for the MTC. Third, MTC's conduct is authorized under the statute. Thus, MTC's argument in reference to Section 65-1-301 through -347 has failed to satisfy any of the conditions outlined in the federal courts.

¶29. Finally, the United States Supreme Court has stated that "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation. . . remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S.Ct. 975, 987, 108 L.Ed.2d 100, 118 (1990). Here, predeprivation process is feasible, although

more time-consuming, as evidenced by the "quick take" statute found at Section 11-27-81.

¶30. Therefore, regardless of the adequacy of the statute's post-deprivation remedies, the statute must provide a predeprivation hearing before taking property. Because it does not provide for such a pre-deprivation hearing, the statute, Miss. Code Ann. §§ 65-1-301 to 65-1-347, is unconstitutional as violative of procedural due process under our state constitution, Miss. Const. Art. 3, § 14. Given this holding, we do not decide the federal due process issue.

## II. WHETHER THE NEW TAKING SCHEME CODIFIED AT MISS. CODE ANN. §§ 65-1-301 TO -347 VIOLATES ARTICLE 3, SECTION 17 OF THE MISSISSIPPI CONSTITUTION.

¶31. Article 3, Section 17 of the Mississippi Constitution provides:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

Section 17 has consistently been interpreted by this Court to require that a court determine whether a taking is for a public use. *See Mayor v. Thomas*, 645 So.2d 940, 942 (Miss. 1994) (whether there is a public use for the property is a judicial question without regard to legislative assertions that the use is public); *Texas Gas Transmission Corp. v. Council*, 199 So.2d 247, 249 (Miss. 1967) (whether taking by eminent domain is for public use is judicial question); *Horne v. Pearl River Water Supply Dist.*, 249 Miss. 358, 162 So.2d 504, 506 (1964) (the question of public use is always a judicial question and that it is made so by Section 17 of our Constitution).

¶32. Lemon argues that Section 17 requires a judicial determination of public use in every case "whenever an attempt is made to take private property for a use alleged to be public. . ." Miss. Const. Art. 3, Sec. 17. Lemon further argues that the new statutory scheme under which the MTC proceeded here (Section 65-1-301 to -347) provides no requirement or opportunity for this judicial determination before title vests in the condemnor. Lemon asserts that the new statute unconstitutionally transfers the question of public use entirely to the condemnor, MTC here.

¶33. For example, Lemon interprets Section 65-1-305 to declare that title passes from the landowner to the MTC at the time of service of process. Thus, in effect, the landowner's first notice of the proceeding advises him that he no longer has title to the property in question. Lemon concedes that Section 65-1-309 allows a landowner to file an Answer, but it is expressly limited to a prayer "for a determination of just compensation." No answer to the issue of public use is allowed.

¶34. MTC agrees that the determination of public use is a judicial question. If a landowner wished to challenge MTC's use of property for public use, then a judicial determination should be made. MTC refers this Court to its own statement in regards to judicial determinations of public use, as follows:

> The constitutionality of the state's power to take land for public use is so well established as to make any discussion of the issues useless. That the use of appellant's property intended by the state highway commission is a public use within the contemplation of Section 17 of the Mississippi Constitution is beyond question.

***Roberts v. Mississippi State Highway Comm'n***, 309 So.2d 156,160 (Miss. 1975).

¶35. MTC also responds that the determination of public use is protected by the statute. As stated above, MTC interprets Section 65-1-313 to allow a landowner to file a motion on all issues raised in pleadings other than the issue of determining just compensation. Further, MTC says Section 65-1-327 allows the trial court discretion to rule on that motion. MTC states that if public use is really at issue, the statute clearly allows the trial court to hear that issue and to rule accordingly, including dismissing all prior orders. Finally, MTC argues that these procedural safeguards were followed in the instant case. Lemon raised the issue of public use by motion, and the trial court properly heard oral arguments and determined that the property being taken was for a public use.

¶36. Lemon replies that MTC has missed the point of Article 3, Section 17 of the Mississippi Constitution. Section 17 states that a judicial determination is required "whenever an attempt is made" to take property. It does not say that a judicial determination should be made after the taking has already occurred. The plain language of Section 17 requires that a court pass on the question of public use in every case of attempted seizure, regardless of whether the issue of public use may be "beyond question" in most cases. Section 17 is at minimum a constitutional formality that cannot be bypassed by statute. The fact that the trial court in case *sub judice* made an after-the-fact determination of public use does not remedy the facial deficiencies of the statute.

¶37. It is well settled law in Mississippi that when a statute is clear and unambiguous then there is no room for construction. In ***Marx v. Broom***, 632 So.2d 1315, 1318 (Miss.1994), this Court stated:

> When the language used by the legislature is plain and unambiguous, such as the language here, and where the statute conveys a clear and definite meaning, as here, the Court will have no occasion to resort to the rules of statutory interpretation. ***State v. Heard***, 246 Miss. 774, 151 So.2d 417 (1963). The courts cannot restrict or enlarge the meaning of an unambiguous statute. ***City of Hazlehurst v. Mayes***, 96 Miss. 656, 51 So. 890 (1910); ***Hamner v. Yazoo Delta Lumber Co.***, 100 Miss. 349, 56 So. 466 (1911); and ***State v. Traylor***, 100 Miss. 544, 56 So. 521 (1911).

***Marx v. Broom***, 632 So.2d 1315, 1318 (Miss.1994). The statute clearly and unambiguously fails to provide a predeprivation opportunity for the landowner to challenge the attempted seizure.[(5)]

¶38. Furthermore, the burden of proof in eminent domain cases is on the landowner to prove fraud or abuse of discretion in questioning the necessity of the taking. ***Morley v. Jackson Redevelopment Authority***, 632 So.2d 1284, 1288 (Miss. 1994). In contrast, this Court has stated "[public use] is the much more complicated issue in this case, and is subject to a different standard, which is rooted in Section 17 of our Constitution . . ." *Id*. at 1289. It is the condemnor which has the burden of proving public use, unlike the question of public necessity, where the lack of public necessity must be shown by the owner. ***Id.*** (*citing* ***Pearl River Valley Water Supply Dist. v. Brown***, 248 Miss. 4, 156 So.2d 572, 576 (1963)).

¶39. In regards to eminent domain, this Court has said:

> No power conferred on any corporation, either private or municipal, is to be more strictly construed than the power to exercise the right of eminent domain. ...The power of eminent domain being in derogation of the common right, acts conferring it are to be strictly construed, and are not to be extended beyond their plain provisions. The right to exercise the power is strictly limited to the

purposes specified in the statute conferring it. The proposed use of the lands of the owner must be clearly embraced within the legitimate object of the power conferred. Where there is any doubt in regard to the extent of the power, the landowner must have the benefit of that doubt.

*Mississippi Power & Light Co. v. Conerly*, 460 So.2d 107, 111 (Miss. 1984) (*quoting* **Wise v. Yazoo City**, 96 Miss. 507, 51 So. 453 (1910)).

¶40. Therefore, since our state constitution--Article 3, Section 17--mandates that a determination of public use be made whenever private property is taken and the condemnor has the burden of proof on the issue of public use, we hold that Sections 65-1-301 to -347, strictly construed, are violative of Article 3, Section 17 of our state constitution for not providing a predeprivation opportunity for the landowner to challenge the taking and to make the condemnor satisfy its burden on the issue of public use. Thus, the statute is hereby declared unconstitutional and void.

## III. WHETHER THE NEW TAKING SCHEME CODIFIED AT MISS. CODE ANN. §§ 65-1-301 TO -347 VIOLATES THE SEPARATION OF POWERS OF MISSISSIPPI GOVERNMENT.

¶41. Lemon lastly argues that the new taking statute violates the separation of powers provisions of the Mississippi Constitution found at Article 1, Sections 1 and 2. Article 1, Section 1 of our state constitution provides:

> The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.

Miss. Const. Art. 1, Sec 1. Article 1, Section 2 provides:

> No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.

Miss. Const. Art. 1, Sec 2.

¶42. Lemon argues that the statute unconstitutionally mandates that the trial judge order the property to be condemned. Lemon refers to the subsection which states, "the judge shall enter such orders in the cause as may be required to place the transportation commission in possession and title." Miss. Code Ann. § 65-1-305(1) (Supp. 1998). Lemon contends that the judge is thus afforded no discretion whatsoever in the exercise of judicial power to the order the property be condemned.

¶43. Lemon refers this Court to *Isom v. The Mississippi Central R.R.*, in which a landowner challenged a railroad's charter which directed the jury in an eminent domain proceeding on the issue of determining the value of the property. *Isom v. The Mississippi Central R.R.*, 36 Miss. 300 (1858). This Court held, *inter alia*:

> [The] direction and instruction to the jury, by the legislative power, was an invasion of the powers properly belonging to the judicial department, expressly forbidden by the constitution, and therefore

void.

*Id*. at 315. The *Isom* Court explained:

> The legislature may not, therefore, exercise powers which, in their nature, are judicial; or close the courts, or forestall the citizen, in his remedy therein, by due course of law, for injuries to his lands or goods. The right of the legislature or the State, by law, to apply the property of the citizen to the public use, and then . . . to interfere with the just powers and province of the courts and juries in administering right and justice, cannot for a moment be admitted or tolerated under our constitution.

*Id*. at 314-15.

¶44. MTC responds in two ways. First, it argues that this Court should not entertain this issue, because Lemon did not raise it before the trial court. Second, if this Court decides to entertain this issue, MTC submits that the statute does not violate the separation of powers provision of our state constitution for reasons developed below.

¶45. MTC cites several of this Court's holdings establishing that, except for questions involving minor parties and incompetents, questions not raised at the trial level will not be considered as grounds for reversal. *See, e.g.*, *Johnson v. Howell*, 592 So.2d 998, 1001 (Miss. 1991); *Natural Father v. United Methodist Children's Home*, 418 So.2d 807, 809 (Miss. 1982); *Astro Transport, Inc. v. Montez*, 381 So.2d 601, 604 (Miss. 1980); *Comfort v. Landrum*, 52 So.2d 658 659 (Miss. 1951).

¶46. Indeed, the general rule is that questions not raised at the trial level will not be considered here as grounds for reversal. *Gale v. Lancaster*, 44 Miss. 413 (1870); *Stewart v. City of Pascagoula*, 206 So.2d 325, 328 (Miss.1968); *United Methodist Children's Home*, 418 So.2d at 809; *Mills v. Nichols*, 467 So.2d 924 (Miss. 1985); *Estate of Myers v. Myers*, 498 So.2d 376 (Miss. 1986); *Cooper Tire & Rubber Co. v. Striplin By and Through Striplin*, 652 So.2d 1102 (Miss. 1995).

¶47. Lemons' Memorandum Brief in Support of Defendant's Motion to Set Aside Order and To Dismiss did not include an argument on separation of powers. The record indicates that a motion hearing on the constitutionality of the statute was conducted on October 10, 1997. After hearing the oral arguments, the trial court determined that the statute was constitutional in ruling on Lemon's motion. At no point in the record did Lemon present his separation of powers argument to the trial court, and thus, the trial court never addressed it in its order.

¶48. In his reply brief, Lemon does not deny that the separation of powers argument was not made in the trial court. However, he argues instead that it is simply a variation on his Section 17/state constitution argument above, because "[t]he new taking scheme violates separation of powers for the same reasons it violates section 17." Regardless of how Lemon tries to spin this point, it is clear that Lemon did not raise this separation of powers argument at the trial court level. Accordingly, we will not consider it.

**CONCLUSION**

¶49. Regardless of the adequacy of the statute's post-deprivation remedies, an eminent domain statute must provide a predeprivation hearing before taking property. The statute, Miss. Code Ann. §§ 65-1-301 to 65-1-347, does not do so and is thus unconstitutional as violative of procedural due process under our state constitution, Miss. Const. Art. 3, § 14. Given this holding, we do not decide the federal due process issue.

¶50. Our state constitution--Article 3, Section 17--mandates that a judicial determination of public use be made whenever an government takes private property. Moreover, the condemnor has the burden of proof on the issue of public use. Hence, Sections 65-1-301 to -347, strictly construed, violates of Article 3, Section 17 of our state constitution for not providing a predeprivation opportunity for the landowner to challenge the taking and make the condemnor satisfy its burden on the issue of public use.

¶51. Because Lemon's separation of powers argument was not raised before the trial court, we will not consider it for the first time on appeal.

¶52. For these reasons, we reverse the judgments of the lower court, and we remand for further proceedings consistent with this opinion.

¶53. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SULLIVAN, P.J., MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. PITTMAN, P.J., AND BANKS, J., NOT PARTICIPATING.**

1. Lemon argues that *Underwood* provides no such "hint," and in no case, suggests a statute providing such a process might be constitutional.

2. Recently, in *Branaman v. Long Beach Water Management Dist.*, 1999 WL 12796, \*4 (Miss.), this Court declared Miss. Code Ann. § 51-29-39, a different eminent domain statute, unconstitutional on its face regarding the "very narrow due process issue of adequate notice to prepare for trial."

3. Section 65-1-309(3) provides the MTC with six (6) months from the date of filing of the complaint in which to file a plat.

4. The "quick take" statute requires a showing of irreparable harm and delay if the ordinary eminent domain proceedings are to be used, and provide for a judicial determination of immediate public need. Miss. Code Ann. §§ 11-27-83 and 11-27-85.

5. The "quick take" statute, Miss. Code Ann. §§ 11-27-81 to -91 (Supp. 1998), safeguards the landowner's predeprivation right to contest the question of public use. Section 11-27-83 requires the condemning authority demonstrate that it will suffer irreparable harm and delay unless given the opportunity to proceed to immediate possession. The court then appoints a disinterested appraiser to appraise the property taken, and Section 11-27-85 provides that the court shall nonetheless deny immediate possession on account of uncertainty with respect to the question of immediate public need. Thus, the landowner under this statute has a predeprivation opportunity to contest taking on grounds of public use. This Court has approved of this statute and noted its purpose, as follows:

> The "quick take" statute . . . was designed to enhance the State's highway program by providing the
> highway department access to the needed right-of-way <u>as quickly as practicable consistent with the</u>

> legitimate interests of the landowner.

*Hudspeth v. State Highway Comm'n*, 534 So.2d 210, 213 (Miss. 1988) (emphasis added).